**Clare R. BRUFFETT, Appellant,**

v.

**WARNER COMMUNICATIONS, INC.**

No. 82–1200.

United States Court of Appeals, Third Circuit.

Argued Sept. 16, 1982.

Decided Nov. 8, 1982.

Frank B. Baldwin, III (argued), Gary L. Bragg, Philadelphia, Pa., for appellant.

Jerome A. Hoffman (argued), John M. Coleman, Dechert, Price & Rhoads, Philadelphia, Pa., for appellee.

Before GIBBONS, WEIS and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Appellant Clare Bruffett seeks damages in this diversity action on a variety of tort and contract theories because his employer, the Franklin Mint Corporation (Franklin), a subsidiary of defendant Warner Communications, Inc., terminated his temporary employment and failed to offer him permanent employment. The district court dismissed the complaint. For the reasons which follow, we will affirm the judgment of the district court in all respects.

I.

According to the allegations of the complaint, which on review of a dismissal under Fed.R.Civ.P. 12(b)(6) must be taken as true, Bruffett responded in October 1978 to an advertisement placed in a Philadelphia newspaper by Franklin Mint inviting applications for employment as an advertising designer. Following an interview, Bruffett was hired for a two-week trial period in November 1978. By letter dated November 30, Bruffett was offered permanent employment contingent on "the successful completion of both [Franklin's] medical and security examinations." Following the initial medical examination conducted on the Franklin Mint premises, Bruffett was requested to undergo additional medical tests by outside physicians. The complaint alleges that these examinations were "successfully completed", but that notwithstanding this fact "Franklin unreasonably and without cause took the position that Plaintiff had not successfully completed the medical examination and so informed Plaintiff orally on or about January 12, 1979." Pending consideration of Bruffett's request that he be given permanent employment in exchange for "a waiver and release from Franklin's medical insurance coverage for any matters disclosed in the medical examinations", Bruffett was continued on a "full-time free lance" basis. On or about April 16, 1979, "Franklin unreasonably and without cause refused to employ Plaintiff in full-time permanent status in the position which Franklin had offered employment and ordered him to leave the premises by May 11, 1979."

The complaint asserted four causes of action: Count I asserted breach of contract to hire Bruffett as a permanent employee as offered in the letter of November 30, 1978. Count II asserted intentional infliction of emotional distress, in that Franklin Mint "through its agents and employees did require Plaintiff to undergo serious medical examination procedures, including without limitation a kidney x-ray and a kidney biopsy, to which Plaintiff rightfully refused to submit" and "communicated to Plaintiff a risk of future, serious kidney failure which

was not justified in view of the results of the medical examination which Plaintiff did undergo." Count III alleged the discharge violated the "clear mandate of public policy set forth in the Pennsylvania Human Relations Act and the Federal Rehabilitation Act of 1973," which prohibit discrimination in employment on the basis of handicap or disability. Count IV alleged "termination of Plaintiff's employment in full-time, free lance status and the refusal to hire Plaintiff in full-time permanent status" without cause or justification, and in violation of "the implied contractual covenant of good faith and fair dealing."

Defendant Warner moved for summary judgment on the ground that each count of the complaint was barred by this court's opinion in *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), "otherwise fails to state a claim upon which relief can be granted, or is barred by the applicable statute of limitations." Warner attached the affidavit of Dr. Marvin L. Lewbart, a staff physician at Franklin Mint, who stated, *inter alia,* that "Mr. Bruffett was rejected on medical grounds, based on the totality of the evidence available, because of my professional opinion of the significant probability of major future medical complications associated with Mr. Bruffett's heavy proteinuria."

In opposition to Warner's motion for summary judgment, Bruffett filed an affidavit stating, *inter alia,* that he has "had diabetes since approximately 1950 which has been under control continuously since that date by use of insulin and diet measures;" that this diabetic condition "has not affected [his] ability to perform as an advertising designer, and during the period of [his] employment by Franklin Mint Corporation [his] performance as an advertising designer was not affected by [his] diabetic condition;" that "[a]s a result of the failure of Franklin Mint Corporation to honor its obligation to employ [him], [he has] suffered damages . . . consisting of lost wages and benefits since May 11, 1979;" and, finally, that as a result of Franklin Mint's wrongful conduct, he has suffered damages including "loss of sleep, hypertension, and other pain and suffering," which symptoms first manifested themselves after December 16, 1979. Bruffett also moved pursuant to Fed.R.Civ.P. 56(e)-(f) to permit the Lewbart affidavit to be further opposed by defendant's forthcoming answers to interrogatories and by granting plaintiff the opportunity to take Lewbart's deposition.

The district court treated defendant's motion for summary judgment as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and granted the motion to dismiss the complaint. *Bruffett v. Warner Communications, Inc.,* 534 F.Supp. 375 (E.D.Pa.1982). The court viewed Counts I and IV as stating essentially the same claim, and held that they failed to state a common law cause of action, relying on this court's decision in *Bonham v. Dresser Industries, Inc., supra.* The court held that Count III, which alleged a violation of public policy, must also be dismissed since "to the extent that [it] is intended to state a claim for direct violation of a provision of the [Pennsylvania Human Relations] Act, it is barred because of plaintiff's failure to file a complaint with the Pennsylvania Human Relations Commission within 90 days of the discriminatory act as required by the statute," and to the extent that it attempted to state a separate claim for relief, it must be dismissed for the same reasons as Counts I and IV. Finally, the court held that Count II which alleged intentional infliction of emotional distress was time-barred. In light of the fact that it had treated the motion for summary judgment as a motion to dismiss and had consequently not relied on the Lewbart affidavit, the court denied as moot Bruffett's motion for further discovery.

## II.

### A.

We consider first plaintiff's contention that the court erred in dismissing his claim for common-law breach of express contract. Plaintiff argues that because he properly alleged a written offer of employment, ful-

fillment of all conditions precedent therein and breach by the employer, this claim should not have been dismissed for failure to state a claim. The complaint, however, expressly pleads that the offer of employment, upon which the alleged contract was based, was contingent on the "*successful completion of both* [Franklin's] *medical and security examinations*", App. at 6a (emphasis added), and a copy of the offer so stating was attached as Exhibit B to the complaint. Exhibit C to the complaint included the report of one of the examining physicians as follows:

> I have reviewed the records of Clare Bruffett and saw him on 12/19/78 in my office. As you know he has long standing diabetes and apparently has the new appearance of heavy proteinuria without the full nephrotic syndrome. His renal function is very good as is his blood pressure. I don't think there is any more to do diagnostically and I believe the proteinuria is secondary to his diabetes. There is a lot we can do for any edema problems that may arise if he should develope [sic] the nephrotic syndrome in the future.

App. at 16a.

Plaintiff does not, and in light of this medical report could not, contend that no serious medical conditions were disclosed by the medical examination. Instead his claim appears to be that we must read the condition of "successful completion" contained in the offer to mean completion of a medical examination which did not uncover any medical conditions which might substantially interfere with his ability to perform the essential functions of the employment. Pennsylvania has stated that it adheres to the subjective standard in interpreting contracts which require performance to the "satisfaction" of the employer. *See Kramer v. Philadelphia Leather Goods Corp.*, 364 Pa. 531, 533, 73 A.2d 385, 386 (1950). However, even if Franklin's offer were construed, as plaintiff suggests, by incorporating an implied covenant of fair dealing and good faith into the condition requiring "successful completion" of the medical examination, *see* Restatement

(Second) of Contracts § 228 comment a (1981), plaintiff's breach of contract claim must fail unless some modification of Pennsylvania's adherence to the discharge at will doctrine could be predicted, since it would be to no avail to plaintiff to claim breach of an express contract of employment which would have been terminable immediately thereafter at the option of the employer.

The complaint does not allege that the contract for employment contained either an express or implied provision that the employment would be for a specific term. This would ordinarily mean that the employment was terminable at the option of either party. *See Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Division*, 281 Pa.Super. 560, 570–71, 422 A.2d 611, 616 (1980). Therefore, the district court did not err in considering the breach of contract claim in conjunction with plaintiff's challenge to the discharge at will doctrine.

The only authority cited by plaintiff with regard to his breach of express contract claim, *Wagner v. Sperry Univac*, 458 F.Supp. 505 (E.D.Pa.1978), *aff'd mem.*, 624 F.2d 1092 (3d Cir.1980), is not helpful to his position. In that case, the employee was able to withstand summary judgment on his claim of breach of contract because he alleged that as a result of his long service with the employer, he could be discharged only in accordance with the employer's personnel policy to use seniority as the "governing factor" in such discharge. No limitation of the alleged employment contract is applicable here distinct from the issue raised by Counts III and IV as to the continuing validity of the common law employment at will doctrine.

**B.**

Before considering that issue, we take up plaintiff's contention that the district court erred in dismissing Count II of the complaint alleging intentional infliction of emotional distress. Plaintiff does not dispute the applicability of the two-year limitations period for "action[s] to recover damages for injuries to the person", 42 Pa.Cons.Stat.

§ 5524(2) (1980). That period is computed "from the time the cause of action accrued." 42 Pa.Cons.Stat. § 5502(a) (1980). The Pennsylvania Supreme Court has stated that "[a] tort cause of action generally accrues on the date of the accident or injury." *Gibson v. Commonwealth*, 490 Pa. 156, 162, 415 A.2d 80, 83 (1980) (citations omitted).

The gravamen of plaintiff's intentional tort charge is the emotional distress resulting from Franklin's action in unjustifiably communicating to him "a risk of future, serious kidney failure." The district court found that Bruffett's "cause of action could not conceivably have accrued later than January 12, 1979" when Franklin informed him that he had not successfully completed the medical examination and of the basis for that decision. *Bruffett v. Warner Communications, Inc.*, 534 F.Supp. at 377. Since the complaint was not filed until December 16, 1981, more than two years thereafter, the district court held that Count II was time-barred. *Id.*

Bruffett argues that he is entitled to the benefit of Pennsylvania's "discovery rule", under which a plaintiff's ignorance of his injury or of the causative relationship between the injury and the defendant's conduct may delay the running of the statute of limitations. *See O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 705–06 (3d Cir.1981). Plaintiff points to his affidavit stating that he has experienced "loss of sleep, hypertension, and other pain and suffering" as a result of defendant's wrongful conduct, and that "[t]he first awareness [he] had that such damages were caused by the actions of Franklin Mint Corporation was after December 16, 1979, at which time [he] began experiencing the physical symptoms described above." He argues that since the physical symptoms did not fully manifest themselves until after December 16, 1979, two years prior to the filing of the complaint, he should not be charged with knowledge of his cause of action until that date.

 Plaintiff cites no authority to show that Pennsylvania would apply its dis-

covery rule to the tort which he alleges or even that it has been applied to any intentional tort. An action for intentional infliction of emotional distress requires four elements: "(1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe." *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir.1979) (en banc). Bruffett does not contend that he experienced no emotional distress at the time he received the communications on which he bases his claim. He focuses only on the date he alleges he began experiencing the physical symptoms. Under the Restatement, which we have held "may be applied as the basis in Pennsylvania law for the tort of intentional infliction of emotional distress", *id.* at 1274, bodily harm is not an essential element of the tort of intentional infliction of emotional distress. *See* Restatement (Second) of Torts § 46 & comment k (1965). Bruffett's cause of action was therefore complete before he experienced any physical symptoms.

This is not one of those comparatively rare cases where the claimant does not and in the exercise of reasonable diligence could not have become aware of the intentional tort until after the statute of limitations has run. *See, e.g., Lewey v. H.C. Fricke Coke Co.*, 166 Pa. 536, 31 A. 261 (1895) (trespass to subterranean property); *Sears, Roebuck & Co. v. Ulman*, 287 Md. 397, 412 A.2d 1240 (1980) (Maryland statute of limitations in defamation action runs not from date of defamatory act but from date plaintiff learned of it). Bruffett does not dispute that he knew of the conduct complained of and of the identity of the alleged wrongdoer more than two years prior to the filing of his complaint. Since plaintiff "was aware of all of the operative facts of his injury" at that time, *Getz v. Bruch*, 400 F.Supp. 1033, 1037 (E.D.Pa.1975), the "discovery rule" may not be invoked to toll the statute of limitations. *See also Kaletha v. Bortz Elevator Co., Inc.*, 383 N.E.2d 1071, 1075 (Ind.Ct.App.1978) (under Indiana law, statute of limitations on cause of action for

intentional infliction of emotional distress began to run from date letter alleged to have caused distress received by third party, even though not communicated to plaintiff until later).

### C.

We turn then to plaintiff's principal contention that the district court erred in relying on our decision in *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), when it dismissed Counts I, III and IV of the complaint. In *Bonham* a former employee suing under the Federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq.,* asserted that his dismissal on the basis of age also gave rise to a claim for breach of contract cognizable under Pennsylvania law. After holding that Pennsylvania public policy against arbitrary age discrimination was manifested by the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, §§ 951 *et seq.* (Purdon 1964 & Supp.1982) (sometimes hereinafter PHRA), we nevertheless affirmed summary judgment for the defendant on the breach of contract claim. We stated:

> We conclude that the Pennsylvania courts would not hold that termination of an at-will employee on the basis of age gives rise to an independent common law cause of action for breach of contract in addition to those statutory remedies. We do not believe that the courts of Pennsylvania would hold that the mere passage of the Human Relations Act created a separate common law claim where none had existed before, and where that void had been filled by that very legislation. Judicial reluctance to create such a remedy is

evident in *Geary* [456 Pa. 171, 319 A.2d 174], and we believe that the courts of Pennsylvania, if directly confronted with the issue, would hold that the Pennsylvania Human Relations Act and the procedures established therein provide the exclusive state remedy for vindication of the right to be free from discrimination based on age.

*Bonham v. Dresser Industries, Inc.,* 569 F.2d at 195 (footnote omitted).

Bruffett argues that the *Bonham* court erred in predicting that there would be no independent common law cause of action recognized in Pennsylvania for breach of contract in addition to the statutory remedies provided in the PHRA. In support of this claim, he refers to the subsequent decision in *Fye v. Central Transportation, Inc.,* 487 Pa. 137, 409 A.2d 2 (1979). The action in *Fye* was filed by an employee who alleged that she had been unlawfully discriminated against on the basis of her sex when her employer refused to re-employ her after pregnancy and related illness. Before she instituted her common law action, she had filed a complaint with the Pennsylvania Human Relations Commission which was terminated at her request. The Supreme Court of Pennsylvania affirmed the dismissal of her common law action, holding that under section 12(b) of the Pennsylvania Human Relations Act, Pa. Stat.Ann. tit. 43, § 962(b) (Purdon Supp. 1982), the remedies provided by that Act are exclusive for those who invoke it.[1] Having once invoked the PHRA procedures, that exclusivity barred the *Fye* plaintiff from making any other claim.[2]

Bruffett focuses on the language of the *Fye* opinion which states that the statute "provided an election for the complaining

---

1. Section 12(b) of the Pennsylvania Human Relations Act, Pa.Stat.Ann. tit. 43, § 962(b) (Purdon Supp.1982), provides in pertinent part:
 [A]s to acts declared unlawful by section five of this act the procedure herein provided shall, when invoked, be exclusive and the final determination therein shall exclude any other action, civil or criminal, based on the same grievance of the complainant concerned. If such complainant institutes any action based on such grievance without re-

sorting to the procedure provided in this act, [she] may not subsequently resort to the procedure herein.

2. In *Lukus v. Westinghouse Electric Corp.,* 276 Pa.Super. 232, 269, 419 A.2d 431, 450–51 (1980), the court held that a claimant who had previously filed an action in federal court based on federal statutes was not thereby barred from resorting to the PHRA remedies.

person to opt for relief under the provisions of PHRA or the right to seek redress by other remedies that might be available." 487 Pa. at 140–41, 409 A.2d at 4. Bruffett argues that since he, unlike the plaintiff in *Fye*, did not invoke the procedures of the PHRA, the exclusivity provision of section 12 of that Act is not applicable to him. This is a reasonable construction of the *Fye* opinion. To the extent there may be language in *Bonham* to the contrary, it must be considered modified by the subsequent and controlling interpretation by Pennsylvania of its own statute. As the *Fye* court stated, the option open to aggrieved employees is either to opt for relief under the provisions of the Pennsylvania statute or "to seek redress by other remedies that might be available." In order to avoid dismissal, therefore, Bruffett must show that there are "other remedies that might be available" to him.

The *Fye* court did not elucidate what was encompassed by its reference to "other remedies" to which a potential PHRA claimant could resort. However, *Fye* cited to *Daly v. Darby Township School District*, 434 Pa. 286, 252 A.2d 638 (1969), where the court held that the exclusivity provision of the PHRA did not bar a plaintiff who had not invoked its procedures from filing an action alleging that a racial classification violated the Pennsylvania Public School Code and plaintiff's constitutional rights. Thus, where a separate statute provides a remedy for the same claim, the employee is free to select that alternative. Similarly, the PHRA could hardly be considered exclusive of an employee's right to vindicate a constitutional violation by an independent action. Although not mentioned in *Fye*, we are confident that a plaintiff could elect to proceed through resort to grievance and arbitration under a collective bargaining agreement. Similarly, we read the *Fye* language to signify that if the employee were to have a cognizable common law action, s/he would be free to elect to file that action in lieu of invoking the PHRA remedy. Thus, Bruffett must show that Pennsylvania would recognize a common law cause of action for an employee discharged and/or not employed on the basis of a disability or handicap, the reasons alleged in his complaint.

Under the "employment at will" doctrine which prevailed at common law, the employment relationship was terminable at will in the absence of a contract to the contrary. Consequently, even employees who performed faithful service over a long period of time could be terminated for no reason or insufficient reason. Some protection from wrongful discharge has been afforded by the growth of labor unions which negotiated for collective bargaining contracts conditioning dismissal on just cause and establishing a grievance and arbitration procedure. Other avenues of protection for employees now available are provided by federal statutes in which Congress has limited employers' rights to discharge at will because of certain overriding national policies. Predominant among these are provisions of Title VII prohibiting discharge based on race, color, religion, sex, or national origin as well as in reprisal for the exercise of Title VII rights, 42 U.S.C. §§ 2000e–2, 2000e–3(a) (1976 & Supp. IV 1980), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 623, 631, 633a (1976 & Supp. IV 1980), prohibiting discharge based on age. Other federal statutes limit discharge for discrete reasons, such as for union activity, *see* National Labor Relations Act §§ 8(a)(1), (3), (4), 29 U.S.C. §§ 158(a)(1), (3), (4) (1976 & Supp. IV 1980), or in reprisal for the employees' exercise of statutory rights or privileges, *see, e.g.,* Occupational Safety and Health Act of 1970, 29 U.S.C. § 660(c) (1976); Employment Retirement Income Security Act of 1974, 29 U.S.C. §§ 1140, 1141 (1976); Federal Railroad Safety Authorization Act of 1980, 45 U.S.C. § 441(a) (Supp. IV 1980). State statutes also protect the employment relationship under certain circumstances, most notably by prohibiting discharge based on race, color, religion, national origin, or sex. Often the statute protecting employees against discharge for a prohibited reason establishes a procedure which must be followed by the employee seeking to benefit from the remedies provided. The procedure

usually entails exhaustion of administrative remedies and a limited period in which the claim or suit must be filed.

Public employees have statutory protection against arbitrary discharge. *See* 5 U.S.C. § 7513 (Supp. IV 1980) ("an agency may take an action ... against an employee only for such cause as will promote the efficiency of the service"); Pa.Stat.Ann. tit. 71, § 741.807 (Purdon Supp.1982) ("No regular employe in the classified service shall be removed except for just cause"). In contrast, employees in the unorganized private sector in the main have no effective protection against unjust dismissal, and their status is a cause for justifiable concern. *See, e.g.,* Summers, *Individual Protection Against Unjust Dismissal: Time for a Statute,* 62 Va.L.Rev. 481 (1976); Blades, *Employment at Will vs. Individual Freedom: On Limiting the Abusive Exercise of Employer Power,* 67 Colum.L.Rev. 1404 (1967); Note, *Protecting At Will Employees Against Wrongful Discharge: The Duty to Terminate Only in Good Faith,* 93 Harv.L. Rev. 1816 (1980).

Recently some state courts have begun to engraft onto the common law rule exceptions to the employer's formerly unlimited prerogative to discharge at will. Illustrative of this trend is the decision in *Fortune v. National Cash Register Co.,* 373 Mass. 96, 364 N.E.2d 1251 (1977), where the Massachusetts Supreme Court implied into the employment at will relationship a requirement of good faith. Pursuant thereto, it affirmed judgment for the employee based on the jury's finding that his termination after 25 years of employment as a salesman was motivated by the employer's bad faith desire to avoid payment of certain bonuses to the salesman. As plaintiff concedes, there is no Pennsylvania case adopting the Massachusetts Supreme Court's approach. He argues, however, that the Pennsylvania Supreme Court decision in *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174 (1974), and the district court decision in *Wagner v. Sperry Univac, supra,* impose limitations upon the employer's "formerly unfettered right" and that "the trend in Pennsylvania law is to enhance the position

of an employee at-will." Appellant's Brief at 25–26. As we have previously noted, the decision in *Wagner* does not support plaintiff's position. Therefore, we turn to the decision in *Geary* to determine if in fact it signifies such a trend in Pennsylvania law.

In *Geary,* an employee of U.S. Steel was allegedly dismissed in retaliation for pointing out to his superiors the inadequate testing of and serious danger created by one of the company's new products, which his employer subsequently withdrew from the market. The employee alleged his discharge under these circumstances was wrongful, malicious and abusive. The Pennsylvania Supreme Court rejected the claim that the discharge was actionable. It stated, "No court in this Commonwealth has ever recognized a non-statutory cause of action for an employer's termination of an at-will employment relationship." *Geary,* 456 Pa. at 174, 319 A.2d at 175. It continued, "What scant authority there is on the subject points the other way." *Id.,* 319 A.2d at 175. Bruffett, however, claims that "the Pennsylvania Supreme Court in *Geary* ... has signalled its alteration of the traditional common law at-will rule, and in particular held that the discharge of an employee at-will would not be excused unless there was a legitimate and plausible reason therefor." Appellant's Brief at 24. The language in *Geary* which he believes supports his view is as follows:

It may be granted that there are areas of an employee's life in which his employer has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power of discharge might plausibly give rise to a cause of action, particularly where some recognized facet of public policy is threatened. The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long since been discredited. But this case does not require us to define in comprehensive fashion the perimeters of this privilege, and we decline to do so. We hold only that where the complaint itself discloses a

plausible and legitimate reason for terminating an at-will employment relationship and no clear mandate of public policy is violated thereby, an employee at will has no right of action against his employer for wrongful discharge.

456 Pa. at 184–85, 319 A.2d at 180 (footnote omitted).

This language does not support plaintiff's exaggerated claim that the employer must hereafter offer "a legitimate and plausible reason" for discharge. On the other hand, we believe that the Pennsylvania Supreme Court has signaled its receptivity to the approach taken by other courts that "public policy reasons" might warrant imposing a limitation on the employer's right to discharge.

Like the *Geary* court we also decline "to define . . . the perimeters" of such a public policy exception in Pennsylvania.[3] Before us is only the limited question of whether Pennsylvania would recognize an employee's common law action for discharge on the basis of handicap or disability which could qualify as an "other remed[y]" as that term was used in *Fye*. Plaintiff argues that the public policy declared in the PHRA ("It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of . . . handicap or disability. . . ." Pa.Stat.Ann. tit. 43, § 952(b) (Purdon Supp.1982)) gives rise to a common law action for wrongful discharge.

■ Because we are sitting in diversity, we are not free to follow our own inclinations as to the manner in which the common law should develop or to decide whether creation of a common law remedy for discrimination on the basis of handicap or disability would be a wise and progressive social policy. We are instead constrained by the requirement that in diversity cases, "a federal court must be sensitive to the doctrinal trends of the state whose law it applies, and the policies which inform the prior adjudications by the state courts." *Becker v. Interstate Properties,* 569 F.2d 1203, 1206 (3d Cir.1977) (footnote omitted), *cert. denied,* 436 U.S. 906, 98 S.Ct. 2237, 56 L.Ed.2d 404 (1978). In *Bonham,* we predicted that the Pennsylvania courts would not hold that termination of an at-will employee on the basis of age gives rise to an independent common law cause of action for breach of contract additional to the statutory remedies provided by the PHRA. The *Bonham* court was aware of the public policy exception articulated in *Geary* and did not read it as applicable when the asserted common law claim was based entirely on the PHRA. As a subsequent panel, we are not free to modify that prediction unless the Pennsylvania Supreme Court's later *Fye* decision indicates a common law remedy would be implied. It does not.

■ Nonetheless, because the *Bonham* court may have been influenced by its belief that the PHRA remedies were exclusive, we set forth our reasons for reaching the independent conclusion that Pennsylvania would not recognize the common law right of action alleged by Bruffett. In the first place, the holding in *Geary* itself signals a narrow rather than an expansive interpretation of the public policy exception. *See generally Boresen v. Rohm & Haas, Inc.,* 526 F.Supp. 1230, 1235–37 (E.D. Pa.1981). Other states have held that retaliatory discharge gives rise to a cause of action by the employee, *see Monge v. Beebe Rubber Co.,* 114 N.H. 130, 316 A.2d 549 (1974); *Palmateer v. International Harvestor Co.,* 85 Ill.2d 124, 52 Ill.Dec. 13, 421 N.E.2d 876 (1981). In contrast, over a strong dissent by one of its members, the

---

**3.** *Geary* was the last decision of the Pennsylvania Supreme Court on the relevant issue. Since that time there have been several decisions of the Superior Court with language embracing the *Geary* dictum establishing a cause of action for wrongful discharge. *See, e.g., Yaindl v. Ingersoll-Rand Co. Standard Pump-Aldrich Division,* 281 Pa.Super. 560, 422 A.2d

611 (1980); *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980); *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978). None of those cases raised the issue presented here, because there was no state statutory remedy to which the employee could resort.

*Geary* court rejected a cause of action by an employee allegedly discharged in retaliation, placing Pennsylvania with those states which have viewed the public policy exception in a more constricted fashion. *See e.g., Ivy v. Army Times Publishing Co.,* 428 A.2d 831 (D.C.1981) (per curiam) (four judges dissenting); *Campbell v. Eli Lilly and Co.,* 413 N.E.2d 1054 (Ind.Ct.App.1980), *petition to transfer denied mem.,* 421 N.E.2d 1099 (Ind.1981) (one judge dissenting); *Martin v. Platt,* 386 N.E.2d 1026 (Ind.Ct.App.1979); *DeMarco v. Publix Super Markets, Inc.,* 360 So.2d 134 (Fla.Dist.Ct.App.1978), *aff'd per curiam,* 384 So.2d 1253 (Fla.1980) (two judges dissenting).

Second, the Pennsylvania courts have frequently stated that the procedures legislatively mandated in the PHRA must be strictly followed. *See, e.g., Fye,* 487 Pa. at 141–42, 409 A.2d at 5. If a common law action for the same claims were recognized, it would give the claimant an opportunity to circumvent the carefully drafted legislative procedures. We recognize that Pennsylvania's neighbor, New Jersey, has affirmed a common law right of action for wrongful discharge attributable to the employee's filing of a worker's compensation claim even though a statutory remedy was provided. *See Lally v. Copygraphics,* 85 N.J. 668, 428 A.2d 1317 (N.J.1981) (per curiam). *But see Green v. Amerada-Hess Corp.,* 612 F.2d 212 (5th Cir.) (interpreting Mississippi law), *cert. denied,* 449 U.S. 952, 101 S.Ct. 356, 66 L.Ed.2d 216 (1980). Unlike the New Jersey worker's compensation situation, the PHRA embodies a discrete comprehensive administrative procedure, including conciliation and negotiation. In *Fye,* the court stated that "It is clear from the [PHRA] that the General Assembly was of the view that the procedures provided by the act represented the most effective approach to the problem of discrimination." 487 Pa. at 142, 409 A.2d at 5.

Finally, we note that the only Pennsylvania cases applying the public policy exception have done so where no statutory remedies were available. In *Reuther v. Fowler & Williams, Inc.,* 255 Pa.Super. 28, 386 A.2d 119 (1978), the court recognized a common law action for an employee who was allegedly discharged for having taken time off to serve on jury duty. In *Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980), the court held that allegations that an applicant was refused employment because of a pardoned conviction in violation of the state constitution stated a cause of action. In neither case was there any statutory remedy to vindicate the important public policy implicated. In *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363, 1366 (3d Cir.1979), we held an employee could sue for tortious discharge because Pennsylvania's anti-polygraph statute embodied "a recognized facet of public policy." Again, the Pennsylvania statute prohibiting such action did not create any statutory remedy.

When the issue of fashioning a common law remedy parallel to that provided in a civil rights statute was presented to the New Hampshire Supreme Court, it held that "[t]he proper remedy for an action for unlawful age discrimination is provided for by statute." *Howard v. Dorr Woolen Co.,* 120 N.H. 295, 414 A.2d 1273 (1980). Thus, New Hampshire, which was an early pioneer in providing a common law action for wrongful discharge for an employee who had no other remedy, *see Monge v. Beebe Rubber Co., supra,* reached a different conclusion when a statutory remedy was available. *Accord Calhoun v. Falstaff Brewing Corp.,* 478 F.Supp. 357 (E.D.Mo.1979); *Wehr v. Burroughs Corp.,* 438 F.Supp. 1052, 1056 (E.D.Pa.1977), *aff'd, with modification, on other grounds,* 619 F.2d 276 (3d Cir. 1980). *But see McKinney v. National Dairy Council,* 491 F.Supp. 1108, 1118–22 (D.Mass. 1980) (predicting Massachusetts would use theory underlying *Fortune v. National Cash Register Co., supra,* to imply common law action for discharge based on age notwithstanding statutory remedies; declines to follow *Wehr* and *Bonham* ); *cf. Cancellier v. Federated Dept. Stores,* 672 F.2d 1312, 1318 (9th Cir.1982) (an ADEA claimant could maintain pendent state claims for unfair termination which did not depend on age), *petition for cert. filed,* —— U.S. ——, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982).

We are not confident that Pennsylvania would imply a common law right of action in this case. It would be particularly inappropriate for a federal court to engage in state common law revision in view of the developing nature of the abusive discharge cause of action at the state level. One of the authentic obligations of federalism at the judicial level requires that we permit the state courts to decide whether and to what extent they will follow the emerging law. *See Boniuk v. New York Medical College,* 535 F.Supp. 1353, 1356–58 (S.D.N.Y. 1982). Because Bruffett was free to utilize the statutory remedies provided by the Pennsylvania legislature for discrimination on the basis of handicap or disability, we believe Pennsylvania would not create a common law remedy in this situation.

It follows that if Pennsylvania would not recognize a common law action for discharge on the basis of handicap or disability, it is less likely to recognize an action for failure to hire on the same basis. We conclude, therefore, that Bruffett had no "other remed[y]" as that term was used in *Fye.* Accordingly, we will affirm the action of the district court dismissing the complaint.[4]

GIBBONS, Circuit Judge, dissenting.

My disagreement with the opinion of the court is narrow. I join in the holding that the complaint fails to state a claim for breach of the terms of an express contract. I join, as well, in the holding that any cause of action for intentional infliction of emotional distress is time barred. Like the majority, I conclude that if Clare R. Bruffett has a cause of action, not time barred,

it must be for termination of an at will contract of employment for reasons which violate a public policy announced by a public agency competent to articulate such policy. We must in this diversity case make a prediction as to whether the Supreme Court of Pennsylvania, as presently constituted, would recognize such a cause of action for termination of at will employment because of a non-disabling diabetic condition.

In *Bonham v. Dresser Industries, Inc.,* 569 F.2d 187, 195 (3d Cir.1977), *cert. denied,* 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978), a panel of this court, affirming a summary judgment in favor of the defendant on a claim that a termination of at will employment violated public policy, stated "that the Pennsylvania Human Relations Act and the procedures established therein provide the exclusive remedy for vindication of the right to be free from discrimination based on age." The *Bonham* panel obviously misread the Pennsylvania Human Relations Act, for like similar statutes in other states it provides that the administrative remedy in question is exclusive only when resorted to.[1] The *Bonham* panel's misreading of Pennsylvania law is manifested unequivocally in a subsequent decision of the Supreme Court of Pennsylvania. In *Fye v. Central Transportation, Inc.,* 487 Pa. 137, 140–41, 409 A.2d 2, 4 (1979), referring to the Human Relations Act, Justice Nix explains:

The General Assembly, recognizing the invidiousness and the pervasiveness of the practice of discrimination,[5] attempted by the PHRA to create a procedure and an agency specially designed and equipped to attack this persisting problem and to provide relief to citizens who

---

4. In light of our disposition, we need refer only briefly to the other two issues which plaintiff has appealed. The first, the district court's refusal to allow plaintiff additional discovery to oppose the summary judgment motion, was correctly characterized as moot by the district court in light of the dismissal pursuant to Fed. R.Civ.P. 12(b)(6). In the other issue, plaintiff appeals the court's order requiring him to post security for costs, claiming that the district court rule applicable to plaintiffs who are not residents of the district violates equal protection. Since plaintiff did post the security and does not claim any specific damage as a result

thereof, we will not reach to decide this constitutional question. We note, however, that in *McClure v. Borne Chemical Co.,* 292 F.2d 824, 835 (3d Cir.), *cert. denied,* 368 U.S. 939, 82 S.Ct. 382, 7 L.Ed.2d 339 (1961), we referred with approval to the predecessor of the local rule at issue here. *See Levine v. Bradlee,* 248 F.Supp. 395, 397–98 (E.D.Pa.1965), *vacated on other grounds,* 378 F.2d 620 (3d Cir.1967).

1. The applicable section, Pa.Stat.Ann. tit. 43, § 962(b) (Purdon Supp.1982), is quoted in note 1 of the majority opinion. *See, e.g.,* N.Y. [Executive] Law § 300 (McKinney 1982).

have been unjustly injured thereby. Although attempting to fashion a special remedy to meet this illusive and deceptive evil, the General Assembly did not withdraw the other remedies that might be available depending upon the nature of the injury sustained. The legislature recognizing that the effectiveness of the procedure it had created would be enhanced by the exclusivity of the provisions of the Act, and the undesirability of allowing the person aggrieved to commence several different actions for relief, *Daly v. School Dist. of Darby Tp.,* 434 Pa. 286, 252 A.2d 638 (1969), *provided an election for the complaining person to opt for relief under the provisions of PHRA or the right to seek redress by other remedies that might be available.*

5 The findings and declaration of policy set forth in the first section of the Act states [sic] in part:

The practice or policy of discrimination against individuals or groups . . . is a matter of concern of the Commonwealth. Such discrimination foments domestic strife and unrest, threatens the rights and privileges of the inhabitants of the Commonwealth, and undermines the foundations of a free democratic state. 43 P.S. § 952 [Supp.1978–79]

(Emphasis supplied). This subsequent statement of Pennsylvania law has overruled *Bonham's* misstatement of it and in a diversity case binds this panel. *See Lenning v. New York Life Ins. Co.,* 130 F.2d 580, 581 (3d Cir.1942). The holding in *Fye* is not itself dispositive, since in that case the plaintiff, relying on a Pennsylvania common law remedy, had in fact resorted to the Human Rights Commission. But the court's analysis is quite plainly predicated upon the assumption that, absent resort to the Commission, the complaint which charged termination of at will employment by reason of pregnancy stated a cause of action.

We are required, therefore, to make a prediction as to whether the Pennsylvania Supreme Court would recognize such a cause of action for termination of at will

employment because of non-disabling diabetes. Moreover in doing so our role as federal judges should not be the stultifying one of using a scissors and a paste pot, but of using the same tools of the judicial process as are available to state court judges in Pennsylvania, including statutes, judicial opinions, treatises, prevailing mores, the trends of decisions in other states, and even our perception of the likely direction of the Supreme Court of Pennsylvania as a result of changes in its membership. *See* Corbin, *The Laws of the Several States,* 50 Yale L.J. 762, 775–6 (1941). In doing so we may occasionally produce a conflict between a federal and a state decision, but that is the inevitable result of a system which provides for litigation of state law causes of action in a federal forum. Indeed the *Bonham* case is a good illustration of the problem; a plain misreading by a federal court of a Pennsylvania statute.

For several reasons the majority's prediction about the trend of decisions in Pennsylvania with respect to public policy limitations on the at will employment doctrine are in my view wrong. I agree with the majority that the starting point for analysis of the problem is the well known case of *Geary v. United States Steel Co.,* 456 Pa. 171, 319 A.2d 176 (1974). In that case four justices reiterated Pennsylvania's adherence to the common law rule, developed in the heyday of the nineteenth century industrialization, that at will employment could be terminated for any reason.[2] The employee was unsuccessful in convincing the majority that a termination because of protests about the marketing of a dangerous product violated Pennsylvania public policy. Even the *Geary* majority acknowledged, however, that Pennsylvania's common law recognized a public policy exception to the nineteenth century doctrine. Justice Pomeroy wrote:

It may be granted that there are areas of an employee's life in which his employer

2. It was once accepted that the common law rule was constitutionally protected. *Adair v. United States,* 208 U.S. 161, 28 S.Ct. 277, 52 L.Ed. 436 (1908); *Coppage v. Kansas,* 236 U.S.

1, 35 S.Ct. 240, 59 L.Ed. 441 (1915). That primitive view does not survive. *NLRB v. Jones & Laughlin Steel Corp.,* 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937).

has no legitimate interest. An intrusion into one of these areas by virtue of the employer's power to discharge might plausibly give rise to a cause of action, *particularly where some recognized facet of public policy is threatened.* The notion that substantive due process elevates an employer's privilege of hiring and discharging his employees to an absolute constitutional right has long been discredited.

319 A.2d at 180 (emphasis supplied). The difference in the closely divided *Geary* court, thus, was not over whether Pennsylvania recognized a public policy exception to the at will employment doctrine, but only over whether discharge for whistle blowing about a defective product fell within it. *See id.* 319 A.2d at 183 (Roberts, J., dissenting).

Since the *Geary* decision all save one of the justices who joined in the majority opinion have left the court. Thus even if we were to accept the majority opinion in *Geary* as an expression of unwillingness to take an expansive view about the public policy exception, we could not at this late date assume that to be the prevailing attitude. We cannot say, as was once said of the Supreme Court of Massachusetts, that in the Supreme Court of Pennsylvania

> [t]he emphasis is on precedent and adherence to the older ways, not on creating new causes of action or encouraging the use of novel judicial remedies that have sprung up in less conservative communities. Here abides the ancient faith in the right of men to chose their own associates, make their own arrangements, govern themselves and thus grow in responsibility without much in the way either of hinderance or help from the state.

*Pomerantz v. Clark,* 101 F.Supp. 341, 346 (D.Mass.1951) (Wysanski, J.). Rather we must recognize that the Supreme Court of Pennsylvania in recent years has in many areas of the law been a leader in adopting reforms in the common law. Our knowledge of the dynamism of that court must enlighten our judgment in predicting how it would react to a case like this one.

Recognition of public policy exceptions to the at will employment doctrine is the clear trend both of decisions and of statutes throughout the United States.[3] The reasons for wholesale reconsideration of the traditional American rule are set forth in the Report of the Committee on Labor and Employment Law of the Association of the Bar of the City of New York, *At Will Employment and the Problem of Unjust Dismissal,* 36 Rec.A.B.City N.Y. 157 (1981). That report points out that the traditional American common law rule, adopted in place of former rules defining the master-servant relationship as one of status rather than contract, was in the late twentieth century an anomaly in the law among the industrial democracies. Encouraging the clear trend toward its reconsideration, the distinguished committee[4] concluded:

> The American rule that authorizes an employer to discharge at will merits reexamination. Constitutional and contract law principles that undergirded the rule have been modified over the past century. The American approach is unique among the western industrialized nations. The modern reality of relative immobility in the labor market, encouraged by a web of ties that bind the employee to the job, places in question a doctrine that rests on

3. Cases and statutes are collected in J. Barbash, J.D. Feerick, & J.B. Kauff, *Unjust Dismissal and At Will Employment* (1982).

4. Members of the Committee on Labor and Employment Law are:

Jerome B. Kauff, Chairman

| | |
|---|---|
| David N. Brainin | Samuel Estreicher |
| Wilbur Daniels | Alex J. Glauberman |
| Florence Dean | Murray A. Gordon |
| E. Thayer Drake | Lewis B. Kaden |
| Alfreida B. Kenney-Harrell | Stanley Schair |
| Everett E. Lewis | O. Peter Sherwood |
| Martin Markson | Edward Silver |
| Rosemary Page | Carole Sobin |
| Bertrand B. Pogrebin | Janet Maleson Spencer |
| Harold Richman | Stephen Spivak |
| John Eliot Sands | Roy N. Watanabe |
| Robert H. Sand | Beverly Wolff |

a theoretical non-mutuality of obligation, and may have the effect of empowering the employer to work considerable unfairness in particular cases or to use the discharge weapon to subvert established public policies.

Some commentators have urged that all employees in this country should enjoy general protections against discharge without "just cause." Such a change would be most appropriately accomplished by legislation. The Committee at the present time takes no position whether such legislation should be enacted.

Some courts have recognized a cause of action, in appropriate circumstances, for discharges that violate statutory or other established public policies, including discharges of whistleblowers who seek to correct employer practices in violation of such policies. The Committee endorses such decisions, and would support legislation along these lines.

*Id.* at 184. It seems highly unlikely to me that the Supreme Court of Pennsylvania, which has so often in recent years been among the first state courts to undertake reforms of the common law, would disregard the direction of the law in other states, or the strong policy arguments in favor of an expansive view of the public policy exception advanced by distinguished commentators.

Moreover in the situation before us the Pennsylvania Supreme Court would not be concerned that its notions of public policy were out of step with those of the Pennsylvania legislature. In *Geary* there was no legislative expression of public policy on the issue which resulted in the discharge. In this case the legislature has spoken:

It is hereby declared to be the public policy of this Commonwealth to foster the employment of all individuals in accordance with their fullest capacities regardless of their ... handicap or disability ... and to safeguard their right to obtain and hold employment without ... discrimination.

Pennsylvania Human Relations Act, § 1(b), Pa.Stat.Ann. tit. 43, § 952(b) (Purdon Supp. 1982). There was no such legislative determination of public policy in the *Geary* case, and a closely divided court declined to adopt one by judicial action alone. But even the *Geary* majority would not have rejected the applicability of a legislative public policy determination.

Since *Geary,* those Pennsylvania courts which have addressed the question have all recognized that the traditional at will employment doctrine is qualified by a public policy exception. *See Hunter v. Port Authority of Allegheny County,* 277 Pa.Super. 4, 419 A.2d 631 (1980) (discharge of at will employee because of pardoned conviction); *Reuter v. Fowler & Williams, Inc.,* 255 Pa. Super. 28, 386 A.2d 119 (1978) (discharge of at will employee for taking time off to serve on jury duty). This court has held that Pennsylvania recognizes the public policy exception. *Perks v. Firestone Tire & Rubber Co.,* 611 F.2d 1363, 1366 (3d Cir. 1979) (discharge of at will employee for refusing to take a polygraph test). In the latter case we found an expression of the Commonwealth's public policy in a statute prohibiting employers from requiring polygraphs. *Perks* is authority for two propositions which should be dispositive here. First, it establishes that legislative expressions of public policy are included in the Pennsylvania common law public policy exception to the at will employment doctrine. Second, it establishes that the *Bonham* holding was predicated not on a narrow view of Pennsylvania common law, but on the panel's mistaken belief that the Pennsylvania Human Rights Commission remedy is exclusive.

There is, therefore, a Pennsylvania common law cause of action for termination of at will employment for reasons which violate a legislative public policy determination. None need be "implied," as the majority suggests. The question is not whether there is such a cause of action, but a narrower one; whether the public policy proscribing discrimination against the handicapped is one of the public policies which limit the at will employment doctrine.

The majority's reasons for rejecting that public policy as a limitation on the at will

employment doctrine are to me completely illogical. Recognizing that the public policy exception is established in the Pennsylvania caselaw, the opinion observes that none of the cases involved a statement of public policy in a statute also embodying a private enforcement scheme. From this the conclusion is drawn that the Supreme Court of Pennsylvania would, in applying the public policy exception, disregard a policy announced in such a statute. The flaws in such reasoning are obvious. There is no reason to suppose that *any* court would attach less significance to a public policy announced in such a statute than to a public policy determined by the court itself, or to one embodied in a statute providing no private enforcement scheme. Indeed, absent a legislative determination that the statutory private remedy should be exclusive, the opposite inference of legislative intention is far more logical. Thus, what is left is a contrived effort to read section 955(b) of the Pennsylvania Human Rights Act as if it provides an exclusive remedy even when, as here, it has not been invoked. As the *Fye* court states unequivocally, that is not what section 955 says. *Fye* overruled *Bonham,* and this panel may not in a diversity case follow the latter. *Perks,* not *Bonham,* is the controlling Third Circuit precedent, and this panel may not disregard it.

Thus, I would reverse the judgment dismissing Mr. Bruffett's complaint that his at will employment was terminated in violation of the Pennsylvania public policy against discrimination against the handicapped, and remand for further proceedings.