782 F.2d 432
 121 L.R.R.M. (BNA) 3073
 Harry C. MURRAY and Jean M. Murray, Appellants,
v.
COMMERCIAL UNION INSURANCE COMPANY (COMMERCIAL), and
American Employers Insurance Company, the Employers' Fire
Insurance Company, the Northern Assurance Company of
America, Commercial Union Life Insurance Company of America,
Ind. and collectively known and t/a Commercial Union
Assurance Companies.
 No. 85-1300.
 United States Court of Appeals,
Third Circuit.
 Submitted Under Third Circuit
Rule 12(6) Jan. 8, 1986.
Decided Jan. 31, 1986.
 
 Rudolph J. Di Massa, Di Massa Associates, Ltd., Philadelphia, Pa., for appellants.
 Steven B. Feirson, George G. O'Brien, Dechert, Price & Rhoads, Philadelphia, Pa., for appellees.
 Before ADAMS, SLOVITER and MANSMANN, Circuit Judges.
 OPINION OF THE COURT
 ADAMS, Circuit Judge.
 
 
 1
 Plaintiffs, husband and wife, sued the husband's former employers after he was discharged from his position. The district court granted a motion to dismiss two counts of the complaint that are purportedly grounded in tort, and later entered summary judgment on the remaining breach of contract claim. Pursuant to earlier decisions of this Court and of state courts concerning the legal remedies available in Pennsylvania following the termination of an employment relationship, we will affirm.
 
 I.
 
 2
 According to plaintiffs' complaint, Harry C. Murray was employed by defendants in 1976, to serve as Regional Fidelity and Surety Bond Manager in the companies' Philadelphia offices. No written contract of employment was entered into by the parties. Mr. Murray was dismissed in January 1983, and there is no statement in the record pointing to any specific reason for this action.
 
 
 3
 Plaintiffs filed a complaint in state court, setting forth three causes of action: for breach of an employment contract between Mr. Murray and defendants; for actions by the defendants committed "deliberately, wantonly and maliciously" and in "bad faith," warranting punitive damages, and for loss of consortium and other damages suffered by Mrs. Murray as a result of defendants' conduct.
 
 
 4
 Following removal of the case to federal court, the district court granted defendants' motion, based on Fed.R.Civ.P. 12(b)(6), to dismiss the second and third counts. Subsequently, the court granted summary judgment to defendants on the breach of contract count. Plaintiffs filed a timely appeal.
 
 II.
 
 5
 A number of preliminary questions are presented concerning federal jurisdiction in this case. On February 27, 1984, defendants petitioned for removal to federal court, and plaintiffs offered no response. Although plaintiffs did not dispute federal jurisdiction until November 19, 1984, at which time they filed a motion to remand the action to state court, we recognize that challenges to the subject matter jurisdiction of a federal court may be raised at any time. See Liberty Mutual Insurance Co. v. Wetzel, 424 U.S. 737, 740, 96 S.Ct. 1202, 1204, 47 L.Ed.2d 435 (1976).
 
 
 6
 In support of their jurisdictional argument, plaintiffs, who are Pennsylvania residents, first contend that there is not complete diversity between themselves and the defendant companies. Federal law provides that "a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. Sec. 1332(c) (1982). Plaintiffs state that "while some of the policy-making powers and personnel are stationed outside Pennsylvania, the corporate defendant regularly conducted activities and provided services in the Philadelphia environs so as to destroy the required diversity...."
 
 
 7
 Plaintiffs appear to confuse the lenient requirements of personal jurisdiction with the more demanding inquiry required to determine a corporation's "principal" place of business for purposes of subject matter jurisdiction. A corporation may have "literally dozens of important places of business one of which we must pick out as the principal one because the statute says so." Kelly v. United States Steel Corp., 284 F.2d 850, 853 (3d Cir.1960). In ascertaining where the principal place of business is located, this Court examines the primary location of the entity's managerial and production functions. Id. at 854. Defendants submitted an affidavit of their assistant corporate counsel, attesting that the companies were incorporated and maintained principal places of business in states other than Pennsylvania. Plaintiffs provided no evidence to the contrary. Consequently, on this record diversity jurisdiction is established.
 
 
 8
 Second, the plaintiffs argue that federal court abstention is appropriate in this type of routine employment dispute. "Unless the constitutionality of a State statute is invoked," their brief declares, "the abstention doctrines dictate that the States be allowed to administer and enforce their own laws without intrusion from the Federal Courts." Such a position disregards the purposes of diversity jurisdiction, and has never been adopted by this Court. Congress provides federal jurisdiction where diversity of citizenship is present to prevent harm to defendants resulting from local prejudice in the application of state and federal law. Accordingly,
 
 
 9
 [r]enunciation of the duty of a federal district court to decide a controversy properly before it under the abstention doctrine is justifiable only in exceptional circumstances. Abstention is proper where a state determination of pertinent state laws may moot a federal constitutional issue, where there are difficult questions of state law bearing on policy issues of substantial public import which transcend the case at bar, and where, absent bad faith, harassment or a patently invalid state statute, the doctrine is invoked to restrain state criminal proceedings.
 
 
 10
 Blake v. Kline, 612 F.2d 718, 727 (3d Cir.1979), cert. denied, 447 U.S. 921, 100 S.Ct. 3011, 65 L.Ed.2d 1112 (1980). This case presents none of the exceptional circumstances referred to in Blake, and indeed involves issues of Pennsylvania state law that have been litigated in this Court several times. See, e.g., Novosel v. Nationwide Insurance Co., 721 F.2d 894 (3d Cir.1983); Wolk v. Saks Fifth Avenue, Inc., 728 F.2d 221 (3d Cir.1984).
 
 
 11
 As a third assault on federal jurisdiction, plaintiffs urge that defendants' petition for removal was fatally defective in that it was verified by an attorney, and not by an official of each company. Where there is more than one defendant, however, the verification requirement of 28 U.S.C. Sec. 1441(a) (1982) is satisfied by the signature of all defendants' attorneys. Alexander v. Cox, 348 F.2d 894, 896 (5th Cir.1965); Greenspun v. Schlindwein, 574 F.Supp. 1038, 1040 n. 2 (E.D.Pa.1983).
 
 
 12
 Defendants also challenge a segment of this Court's appellate jurisdiction. They observe that plaintiffs' notice of appeal refers only to the district court's orders granting summary judgment on the contract claim, and not to the earlier orders dismissing the other two counts of the complaint. Defendants therefore insist that the Court has appellate jurisdiction only over the issues raised in the orders cited in the notice of appeal. See Fed.R.App.P. 3(c) (the notice of appeal "shall designate the judgment, order or part thereof appealed from ...."). Nevertheless, in their appellate briefs all parties addressed every issue presented to the district court, and in fact plaintiffs could not appeal the early dismissals of the second and third counts until the final judgment was entered. See Fed. R.Civ.P. 54(b). In a similar situation, this Court recently favored a liberal approach in interpreting Rule 3(c), and held that an appeal of a summary judgment allowed appellate jurisdiction over the disposition of all claims in a complaint. Gooding v. Warner-Lambert Co., 744 F.2d 354, 357 n. 4 (3d Cir.1984); accord United States v. One 1977 Mercedes Benz, 708 F.2d 444, 451 (9th Cir.1983), cert. denied, 464 U.S. 1071, 104 S.Ct. 981, 79 L.Ed.2d 217 (1984). Cf. Elfman Motors, Inc. v. Chrysler Corp., 567 F.2d 1252, 1254 (3d Cir.1977) (appeal from a specified judgment or portion thereof does not present for review other judgments or portions of other judgments).
 
 
 13
 In sum, we have jurisdiction to review the district court's determinations concerning all three counts of the complaint, and now turn to that task.
 
 III.
 
 14
 Plaintiffs' first cause of action alleged that Mr. Murray's employment was terminated "without cause," and that this action "constituted breach of defendant's obligations...." The district court ruled that defendants were entitled to summary judgment on this count as a matter of law, since Mr. Murray's employment was terminable at the will of either party, and under state law such employment may be terminated without cause. This ruling will be upheld if there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law. Wolk, supra, 728 F.2d at 224.
 
 
 15
 Pennsylvania law concerning breach of contract actions is clear that absent a statutory or contractual provision to the contrary, it is presumed that either party may end an employment relationship at any time, for any or no cause. Geary v. United States Steel Corp., 456 Pa. 171, 319 A.2d 174, 176 (1974). The burden is on plaintiffs to overcome this presumption by demonstrating "facts and circumstances establishing some tenure of employment...." Cummings v. Kelling Nut Co., 368 Pa. 448, 84 A.2d 323, 325 (1951).
 
 
 16
 In an attempt to establish that Mr. Murray was employed for a term, and thus that his employment was not terminable at will, plaintiffs' complaint avers that Mr. Murray was assured employment until retirement age of 65. p 5(b). Mr. Murray's deposition testimony, however, showed otherwise. He conceded that a retirement age was not discussed at the time he was hired in 1976, and instead he referred repeatedly to assurances of a "future and lifetime career," and of employment for "[a]s long as I wanted and they wanted me and I was satisfactory to them." Under Pennsylvania law, promises of "permanent" and "lifetime" employment are too vague to create employment for a term. See, e.g., Seiss v. McClintic-Marshall Corp., 324 Pa. 201, 188 A. 109, 109-10 (1936); Moorhouse v. Boeing Co., 501 F.Supp. 390, 395 (E.D.Pa.), aff'd mem., 639 F.2d 774 (3d Cir.1980). Therefore, Mr. Murray's testimony established that his employment could be terminated without cause, and the district court did not err in ruling that defendants were entitled to summary judgment on the breach of contract claim as a matter of law.
 
 
 17
 Plaintiffs also filed a motion for reconsideration of this ruling on the basis of new evidence. The district court denied this motion as well. Plaintiffs' counsel asserted that he was notified of oral argument on defendants' summary judgment motion only hours before it was heard, and therefore did not have time to review his client's deposition for favorable testimony. The district court judge was unimpressed by this contention, noting that the motion was made and the deposition completed nearly four months before oral argument. Under these circumstances, we cannot say that the denial of reconsideration was an abuse of discretion. See DeLong Corp. v. Raymond International, Inc., 622 F.2d 1135, 1139-40 (3d Cir.1980).
 
 
 18
 Indeed, the additional material submitted along with the motion for reconsideration would not be of benefit to plaintiffs. Plaintiffs stress Mr. Murray's reference at his deposition to rights listed in "A to K" of paragraph 5 of the complaint as items promised by his employers. The reference encompasses the retirement age of 65 listed in p 5(b). This exceedingly vague testimony, however, is contradicted by a more explicit exchange:
 
 
 19
 Q. Did you understand that normal retirement age was 65?
 
 
 20
 A. Well, you can retire now, I think, 62. It's sort of iffy. I never gave that much thought. I think if you're in reasonably good health and you do the job well--we have a president at 73, he's running for reelection. What else can I say?
 
 
 21
 Plaintiffs also offered in their motion for reconsideration an affidavit of Robert J. Whitaker, a former vice-president of defendant Commercial, asserting that Mr. Murray was promised employment until age 65. This statement was disputed by Mr. Murray's unequivocal testimony:
 
 
 22
 Q. Was there any discussion with Mr. Whitaker or Mr. Walthour or anyone else at Commercial Union about a retirement date?
 
 
 23
 A. No.
 
 
 24
 Because of Mr. Murray's clear admissions, it is evident that his employment was terminable at will and no issue of material fact remains to delay judgment for the defendants on the breach of contract portion of the complaint.
 
 IV.
 
 25
 Plaintiffs' second count, labelled "Trespass," restated the allegations in count I and added that defendants acted "deliberately, wantonly and maliciously," and in "bad faith." The district court dismissed this claim, ruling that it was a repetition of the breach of contract count, attempting to sound in tort in order to collect punitive damages not available in contract actions. See Smith v. Harleysville Insurance Co., 275 Pa.Super. 246, 418 A.2d 705, 706 (1980) ("The law in Pennsylvania has always been that punitive damages cannot be recovered for breach of contract."), aff'd, 494 Pa. 515, 431 A.2d 974 (1981).
 
 
 26
 Faced with such clear authority, plaintiffs now attempt to recharacterize their claim as a tort action for wrongful discharge, noting our statement that "Pennsylvania law permits a cause of action for wrongful discharge where the employment termination abridges a significant and recognized public policy." Novosel, supra, 721 F.2d at 898. They assert that the termination abridged public policy, in that it was intended to discriminate on the basis of age and to interfere with Mr. Murray's accrued pension rights. Plaintiffs' complaint, however, did not plead such a cause of action or supporting facts. And even if the age discrimination point was pleaded properly, dismissal of the claim would be appropriate.
 
 
 27
 Because of the limitations imposed on a federal court sitting in diversity, we have been cautious in our recognition of the common law action emerging in Pennsylvania for wrongful discharge. In Geary, supra, the Pennsylvania Supreme Court recognized that certain employer actions may give rise to a cause of action by at-will employees, "particularly where some recognized facet of public policy is threatened." 319 A.2d at 180. In Bruffett v. Warner Communications, Inc., 692 F.2d 910 (3d Cir.1982), we interpreted recent decisions of the Pennsylvania Supreme Court as signaling "its receptivity to the approach taken by other courts that 'public policy reasons' might warrant imposing a limitation on the employer's right to discharge." Id. at 918. Consequently, Novosel held that an employee who alleged that he was discharged for refusing to engage in political activity on his employer's behalf had stated a claim, because of the presence of the important public policy involving freedom of expression.
 
 
 28
 At the same time, because the Pennsylvania courts have frequently stated that the procedures legislatively mandated in the Pennsylvania Human Relations Act (PHRA), 43 Pa.Stat.Ann. Sec. 955(a) (Purdon Supp.1985), must be strictly followed, and because recognition of a common law action for the same claims would give the claimant an opportunity to circumvent the carefully drafted legislative procedures, we predicted that where the public policy allegedly implicated by the employee discharge is derived entirely from a statute that also provides a legal remedy, Pennsylvania courts will not recognize a common law cause of action. Bruffett, supra, 692 F.2d at 919; Wolk, supra, 728 F.2d at 223-24. Bruffett, supra, 728 F.2d at 223-24. Bruffett therefore precludes a tort claim promised on discrimination against the handicapped and disabled, and Wolk denies a tort claim for a termination allegedly motivated by sexual discrimination, because both claims may be remedied in an action pursuant to the PHRA.[1]
 
 
 29
 Employer actions that discriminate on the basis of age violate public policy, but the PHRA provides the exclusive remedy for this undesirable conduct as well. See Bonham v. Dresser Industries, Inc., 569 F.2d 187, 195 (3d Cir.1977), cert. denied, 439 U.S. 821, 99 S.Ct. 87, 58 L.Ed.2d 113 (1978). Further, Mr. Murray's claimed loss of pension rights, to the extent it was more than the inevitable consequence of any employee discharge, may be compensated in an age discrimination claim pursuant to the PHRA. See PHRA, 43 Pa.Stat.Ann. Sec. 962(c) (resort to administrative proceedings of PHRA does not foreclose right of action in court of common pleas; complainant may sue for any "legal or equitable relief as the court deems appropriate.").
 
 
 30
 The Bruffett-Wolk prediction has been questioned by some who observe that the PHRA condemns so many employment practices that few tort actions for wrongful discharges that violate public policy will stand.[2] Such a result is viewed as unfair, inasmuch as the PHRA requires administrative proceedings as a prerequisite to judicial review. Nevertheless, this is, in the view of our earlier decisions, the probable approach of the Pennsylvania legislature, and a federal tribunal may not alter it.
 
 
 31
 Next, plaintiffs maintain that if a tort claim for wrongful discharge is unavailable, their complaint has pleaded tortious interference with contractual rights. Again, we decline to permit a party to argue on appeal causes of action that were not pleaded in district court. Moreover, this newly developed theory of liability is in any event legally unsupportable. There is a division of authority between two intermediate appellate courts in Pennsylvania whether, as plaintiffs now contend occurred here, an agent of a corporation may be found to have interfered with the contractual agreement between the corporation and another employee. Compare Raab v. Keystone Insurance Co., 271 Pa.Super. 185, 412 A.2d 638, 639-40 (1979) (no such cause of action is permitted), appeal dismissed, 496 Pa. 414, 437 A.2d 941 (1981), with Yaindl v. Ingersoll-Rand Co., 281 Pa.Super. 560, 422 A.2d 611 (1980) (such a claim is allowed). Nevertheless, even the Yaindl court recognized that this tort claim is virtually indistinguishable from the tort of wrongful discharge. Id. at 619. Consequently, we see plaintiffs' argument as an attempt to circumvent this Court's conclusion that where a Pennsylvania statute announces a public policy supporting, and provides a remedy for, wrongfully discharged employees, no tort cause of action under the common law is available. Wolk, supra, 728 F.2d at 224. We decline to permit such a dilution of our earlier holdings.
 
 V.
 
 32
 Count III of the complaint concerns the rights of Mrs. Murray, and alleges that
 
 
 33
 as a result of the injuries suffered by plaintiff[, his wife] has been and will in the future be deprived of the aid, comfort, companionship, services and consortium of said husband, all of which has been, and will in the future be to her great financial damage and loss.
 
 
 34
 21. As a result of defendants [sic] wanton misconduct, plaintiff herein sustained great pain and suffering, loss of spouse's support, serious and permanent injury to her psyche and to her physiological and psychological well-being.
 
 
 35
 This claim, the district court held, was another attempt to recover tort damages that are unavailable in breach of contract claims. Mrs. Murray was not a party to the contract, and therefore could not maintain such an action. See Hall v. Goodman Co., 310 Pa.Super. 465, 456 A.2d 1029, 1035 (1983). Further, to the extent Count III is viewed as a tort claim, Mrs. Murray's right to recover in tort is derivative to that of her husband. See, e.g., Little v. Jarvis, 219 Pa.Super. 156, 280 A.2d 617, 620 (1971) (one cannot recover for loss of consortium in absence of defendant's liability to spouse). As defendants are not liable in tort to Mr. Murray, his wife's claims must also fall. Accordingly, the district court did not err in dismissing the third count of the complaint.
 
 VI.
 
 36
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 Bruffett took note of the decision in Fye v. Central Transportation, Inc., 487 Pa. 137, 409 A.2d 2, 4 (1979), that held that the PHRA "provided an election for the complaining person to opt for relief under the provisions of the PHRA or the right to seek redress by other remedies that might be available." The Court nevertheless predicted, for the reasons stated in the text above, that where the PHRA provides a remedy for an employee discharge, Pennsylvania will not create a common law remedy. See also Wolk, 728 F.2d at 223-24 & 224 n. 3
 
 
 [2]
 See, e.g., Comment, The Role of Federal Courts in Changing State Law: The Employment At Will Doctrine in Pennsylvania, 133 U.Pa.L.Rev. 227, 261 (1984)