**Frederick P. ENGSTROM and
Barbara A. Engstrom**

v.

**JOHN NUVEEN & COMPANY, INC.**

Civ. A. No. 86–1989.

United States District Court,
E.D. Pennsylvania.

Aug. 31, 1987.

David L. Pennington, Philadelphia, Pa., for plaintiff.

Robert S. Hawkins, Stephen J. Sundheim, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

SHAPIRO, District Judge.

In this diversity action, plaintiffs Frederick P. and Barbara A. Engstrom, husband and wife, filed suit against Mr. Engstrom's former employer, defendant John Nuveen and Company, Inc. ("Nuveen"), arising out of Mr. Engstrom's discharge from employment in 1985 after more than 27 years of employment with Nuveen. For the reasons stated below, defendant's motion for summary judgment will be granted and plaintiffs' motion to open and set aside entry of default on the counterclaim will be granted.

Plaintiffs filed their complaint on April 8, 1986, and an amended complaint on May 15, 1986. In response to a motion by defendant, the court struck paragraph three of the complaint for failure to comply with Fed.R.Civ.P. 11, count IV for failure to comply with Fed.R.Civ.P. 9(b), and the remainder of the complaint for failure to comply with Fed.R.Civ.P. 8; the court gave plaintiffs leave to file a second amended complaint, which plaintiffs filed August 14, 1986.

In the second amended complaint, the Engstroms alleged claims of breach of contract, breach of implied contract, promissory estoppel, breach of duty of good faith and fair dealing, fraud, wrongful discharge, negligence, intentional infliction of emotional distress, and loss of consortium. Nuveen filed a motion to dismiss the second amended complaint; plaintiffs opposed the Fed.R.Civ.P. 12(b)(6) motion. The court dismissed the claims of breach of implied contract, breach of duty of good faith and fair dealing, wrongful discharge, negligence, and intentional infliction of emotional distress for failure to state a claim upon which relief can be granted.[1] The court denied the motion on the fraud count, but limited plaintiffs' claim to those misrepresentations averred in paragraphs 16 and 17 of the second amended complaint. The court granted plaintiffs leave to file a third amended complaint adding averments supporting any additional claim for fraud; plaintiffs did not file a third amended complaint.

Nuveen then answered the counts remaining in the second amended complaint and asserted a counterclaim under the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa. C.S.A. § 5701 et seq. (West 1983 and Supp.1987). On request of defendant Nuveen, the clerk entered a default on the counterclaim because plaintiffs failed to plead or otherwise defendant against the counterclaim.[2] The Engstroms have moved to vacate the default on Nuveen's counterclaim. Nuveen has filed a motion for summary judgment.

When deciding a motion to dismiss, the court must consider all of the well-pleaded allegations in the complaint as true and construe the complaint in the light most favorable to plaintiffs. *Jenkins v. McKeithen*, 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969); *Hochman v. Board of Education of Newark*, 534 F.2d 1094, 1097 n. 1 (3d Cir.1976). A complaint should not be dismissed for fail-

1. Although the court stated in a conference call to counsel the reasons for the ruling on the Fed.R.Civ.P. 12(b)(6) motion, those reasons are reviewed in this memorandum for the benefit of the parties.

2. In the answer to the second amended complaint, Nuveen asserted a second count under Ill.Rev.Stat. Ch. 38, § 14-6, allowing a civil recovery for violation of Illinois criminal prohibitions against eavesdropping. Nuveen did not obtain entry of a default against plaintiffs on count 2 of the counterclaim, even though the Engstroms failed to respond. Count 2 of the counterclaim has since been withdrawn.

ure to state a claim unless it appears beyond doubt that plaintiffs can prove no set of facts in support of the claim that would entitle plaintiffs to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

In the second amended complaint, plaintiffs allege as follows:

In 1957, Nuveen hired Mr. Engstrom to sell and tade tax-exempt securities (paragraph 7). From 1961 through 1968, Mr. Engstrom purchased 2500 shares of Nuveen stock with borrowed money at the behest of Nuveen's agents. (paragraph 11). Engstrom was also encouraged to pledge his profit-sharing interest in Nuveen stock. (paragraph 12). On or about October 24, 1968, Nuveen's agent advised Engstrom that:

> "investment of your interest in the Profit Sharing Trust in Fund "B" is an opportunity that you have at this time to directly participate ... in the program, planned for the future of the Nuveen Organization by your Board of Directors, that contemplates not only a fair return to stockholders on their investment but also the continuance of generous employee benefits, including among other things:
>
> a. Annual salary compensation that compares very favorably to the highest rates paid in our industry; and
>
> b. Payment of cash bonuses or Christmas gifts in profitable years."

(paragraph 17). On or about September 12, 1969, Investors Diversified Services ("IDS") acquired Nuveen; at that time, the President of Nuveen assured Engstrom that:

> "(a) Nuveen would employ him until his voluntary retirement;
>
> (b) He would ultimately receive generous payments, to make up for lost monies invested in Nuveen stock prior to its acquisition by IDS, to reimburse him for anticipated salary reductions and lost bonuses that the Plaintiff incurred during the early years of the IDS acquisition of the Defendant Nuveen; and
>
> (c) He would receive excellent treatment, salary increases and bonuses."

(paragraph 16). In reliance on these promises, Mr. Engstrom refrained from seeking other employment opportunities at higher rates of compensation. (paragraph 21). On February 28, 1985, Nuveen fired Engstrom. (paragraph 8). Following Engstrom's termination, Nuveen agents opened his mail and used his customer lists to Nuveen's exclusive benefit. (paragraphs 22–24).

The Court granted Nuveen's Fed.R. Civ.P. 12(b)(6) motion on the count alleging breach of an implied contract. Taking the well-pleaded allegations in the complaint as true and construed in the light most favorable to the Engstroms, Mr. Engstrom either had an oral contract of employment with definite terms, or was employed-at-will; under Pennsylvania law, there is no cause of action for breach of an implied employment contract, because every employment relationship is a contractual relationship. *E.g., Darlington v. General Electric,* 350 Pa.Super. 183, 504 A.2d 306, 309 (1986). The employment relationship is presumed to be employment-at-will unless the employee can overcome the presumption with evidence of definite and specific terms of employment concerning length of employment or cause for termination. *Murray v. Commercial Union Insurance Co.,* 782 F.2d 432 (3d Cir.1986); *Darlington,* 504 A.2d at 311. Both parties conceded this point in their briefs and during the conference call by treating the claim for breach of implied contract as part of Mr. Engstrom's claim for breach of contract. Although contract terms can be implied, the employment contract itself cannot; either the employee works at-will or has an express employment contract with a term establishing a definite and specific length of employment. *E.g., Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 913 (3d Cir.1982). Therefore, the court granted the 12(b)(6) motion on the claim for breach of implied contract and denied the motion on the claim for breach of contract.

Count 4 alleged a breach of a duty of good faith and fair dealing; the court granted defendant's motion to dis-

miss for failure to state a claim. There is no claim under Pennsylvania law for breach of a duty of good faith and fair dealing where the employment relationship is at-will. *Wolk v. Saks Fifth Avenue, Inc.*, 728 F.2d 221, 225 (3d Cir.1984); *Bruffett*, 692 F.2d at 917. There may be an express or implied covenant of good faith and fair dealing in any contract between the parties, but if so, its breach is a breach of contract rather than an independent breach of a duty of good faith and fair dealing. Therefore, the court allowed discovery to proceed on Mr. Engstrom's breach of contract claim, but dismissed the separate claim for breach of a duty of good faith and fair dealing.

The court also dismissed the claim for wrongful discharge because it failed to state a claim upon which relief could be granted. An employee-at-will has no claim against his employer for wrongful discharge except where the employment termination violates a significant and recognized public policy, *Novosel v. Nationwide Insurance Co.*, 721 F.2d 894, 898 (3d Cir. 1983); *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (1974), or where the complaint alleges a specific intent to harm in violation of public policy. *E.g., Brennan v. Lion Manufacturing Co., Inc.*, No. 85–3650, slip op. at 2 (E.D.Pa. February 1, 1986) [Available on WESTLAW, DCT database]; *Darlington*, 504 A.2d at 317–319. Plaintiffs' complaint fails to identify *any* "significant and recognized public policy" abridged by the termination in this case, let alone a "clearly mandated public policy ... that strikes at the heart of a citizen's social right, duties and responsibilities." *Novosel*, 721 F.2d at 899. Plaintiffs' broad assertions in the complaint, even when viewed as true and in the light most favorable to plaintiffs, do not state a specific intent to harm rising to the level of a public policy violation within the *Geary* and *Novosel* exception for a wrongful discharge claim. *Brennan*, slip op. at 2; *Darlington*, 504 A.2d at 319.

If Engstrom were not an employee at will by reason of an oral contract for a specific term of employment, the wrongful discharge claim still failed to state a claim upon which relief could be granted. Pennsylvania recognizes a cause of action for wrongful discharge only when the employment is at-will because terminated employees who are not at-will employees may pursue their claims under breach of contract theories. *Harrison v. Fred S. James, P.A., Inc.*, 558 F.Supp. 438, 444 (E.D.Pa. 1983); *Darlington*, 504 A.2d at 318; *see also Ross v. Montour Railroad Co.*, 357 Pa.Super. 376, 516 A.2d 29, 32 (1986) ("the tort of wrongful discharge is available only when the employment relationship is at-will.")

Plaintiffs alleged a claim for negligence arising out of Nuveen's termination of Mr. Engstrom; the court granted the Fed.R.Civ.P. 12(b)(6) motion to dismiss this claim. Taking the well-pleaded allegations as true, Mr. Engstrom states that Nuveen owed him a duty to avoid subjecting him to an unreasonable risk of injury. The second amended complaint alleges that, by firing Engstrom, encouraging him to purchase Nuveen stock, and opening and misusing Engstrom's mail, Nuveen breached a duty to Engstrom and proximately caused physical and monetary harm to Engstrom.

Pennsylvania does not recognize a claim for negligence arising from termination of an at-will employee. *E.g., Darlington*, 504 A.2d at 317; *cf. Yaindl v. Ingersoll-Rand Co.*, 281 Pa.Super. 560, 422 A.2d 611, 616 (1980) (Pennsylvania does not recognize nonstatutory cause of action, except wrongful discharge, arising from employer's termination of an at-will employment relationship). If Engstrom had an employment contract for a definite term, any damages Engstrom suffered from the wrongful termination before his voluntary retirement would have to be recovered by action in contract, rather than tort, because if there was an obligation to retain Engstrom, it could only arise by contract. Mr. Engstrom's negligence count failed to state upon which relief could be granted. However, the court did not dismiss the tort count for fraud arising out of Nuveen encouraging Engstrom to purchase Nuveen stock. Also, the court advised plaintiffs

that they could seek leave of court to add a claim for invasion of privacy based upon the plaintiffs' allegations that Nuveen opened and misused Mr. Engstrom's personal mail, *see Vernars v. Young,* 539 F.2d 966, 969 (3d Cir.1976) (Pennsylvania tort of invasion of privacy includes unauthorized opening and reading of personal mail), but plaintiffs did not seek leave to add a claim for invasion of privacy.

The court also dismissed the claim for intentional infliction of emotional distress. Pennsylvania law allows recovery for intentional infliction of emotional distress only in very egregious cases. *Bradshaw v. General Motors Corp.,* 805 F.2d 110, 113–115 (3d Cir.1986); *Chuy v. Philadelphia Eagles Football Club,* 595 F.2d 1265, 1274 (3d Cir.1979). Even taking Mr. Engstrom's allegations as true and viewed in his favor, the facts alleged are not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bradshaw,* 805 F.2d at 114, *quoting* Restatement (Second) of Torts § 46 comment. The employer-employee status is not a special relationship justifying relaxation of this standard. *Bradshaw,* 805 F.2d at 115.

The counts in the second amended complaint that stated claims upon which relief could be granted and withstood a motion to dismiss under F.R.C.P. 12(b)(6) were claims for breach of contract, promissory estoppel, fraud, and loss of consortium. Defendant has now filed a motion for summary judgment on these remaining counts. The court applied a different standard when ruling on a motion for summary judgment under Fed.R.Civ.P. 56. The court must grant a motion for summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. It is not inconsistent for a court to deny defendant's motion to dismiss but grant defendant's motion for summary judgment if after adequate time for discovery the defendant meets its burden of showing that there is no genuine issue of material fact. *Cf. Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The court now grants defendant's motion for summary judgment on the breach of contract claim. Defendant has met its burden of showing no genuine issue of material fact; Engstrom cannot overcome the presumption that his employment was terminable at will. *See Anderson,* 477 U.S. 242, ——, 106 S.Ct. 2505, 2512–13, 91 L.Ed.2d 202, 214–215.

> "Pennsylvania law concerning breach of contract actions is clear that absent a statutory or contractual provision to the contrary, it is presumed that either party may end an employment relationship at any time, for any or no cause. *Geary v. United States Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 176 (1974). The burden is on plaintiffs to overcome this presumption by demonstrating 'facts and circumstances establishing some tenure of employment ...' "

*Murray,* 782 F.2d at 435 (citation omitted). The contractual provision necessary to overcome the at-will presumption must be for a specific and definite term, not vague or conclusory. *E.g., Murray,* 782 F.2d at 435; *Adams v. Budd Co.,* 583 F.Supp. 711, 714 (E.D.Pa.1984); *Darlington,* 504 A.2d at 313; *Banas v. Matthews International Corporation,* 348 Pa.Super. 464, 502 A.2d 637, 646 (1985). "... [A] specific 'length of time' is an essential element of any contract of employment, without which no cause of action will lie." *Muscarella v. Milton Shoe Mfg. Co., Inc.,* 352 Pa.Super. 158, 507 A.2d 430, 432 (1986).

Even drawing all inferences in favor of plaintiffs, the statements concerning duration of employment made to Mr. Engstrom are too vague, conclusory, and indefinite as a matter of law to constitute a specific length of time and overcome that at-will presumption. The complaint alleges that Nuveen would employ Engstrom until his "voluntary retirement." (Second amended complaint, paragraph 16). At his deposition, Engstrom testified that he told Frank Wendt, then president of Nuveen, that he would be forced to seek other employment because of the IDS takeover; Engstrom

said Wendt told him over the telephone "... if you stick it out with me I promise you you'll have a job until retirement. Your future is very bright here...." (Engstrom Dep. 90–91). Engstrom testified that the promise was "open ended". (Engstrom Dep. 144).

In *Murray,* the Third Circuit upheld the district court's grant of defendant's motion for summary judgment on a breach of contract claim because the plaintiff did not present sufficient evidence to overcome the presumption of at-will employment. In his deposition, Murray stated he was assured of a "future and lifetime career" and of employment for "[a]s long as I wanted and they wanted me and I was satisfactory to them." *Murray,* 782 F.2d at 435. The Third Circuit rejected plaintiff's evidence as insufficient:

> Under Pennsylvania law, promises of "permanent" and lifetime employment are too vague to create employment for a term. Therefore, Mr. Murray's testimony established that his employment could be terminated without cause, and the district court did not err in ruling that defendants were entitled to summary judgment on the breach of contract claim as a matter of law.

*Id.* (citations omitted). Employment until "voluntary retirement" is no more definite than the promises made in *Murray.*

In *Brennan v. Lion Manufacturing Co., Inc.,* No. 85–3650, slip op. at 1 (E.D.Pa. February 1, 1986), the court rejected plaintiff's argument that whether plaintiff was an employee at-will was a question of fact for the jury; the court held that an oral representation that the employee could work "for as long as [he] performed his duties satisfactorily" was insufficient as a matter of law to overcome the at-will presumption. *Accord Braun v. Kelsey-Hayes Co.,* 635 F.Supp. 75, 77 (E.D.Pa.1986). Recent state cases confirm that *Murray* remains an accurate statement of Pennsylvania law. *See, e.g., Muscarella,* 507 A.2d at 432 (allegation that "employment relationship would continue so long as services were satisfactory or unless and until plaintiff gave just cause for discharge" held insufficient as a matter of law); *Darlington,* 504 A.2d at 312 (terms such as "permanent employment" or "so long as performance is satisfactory" do not overcome presumption).

The employment-at-will presumption could have been rebutted in this case by:

1) Evidence that both parties had a mutual understanding of the meaning of "employment until voluntary retirement", or

2) Evidence that the employee gave the employer additional consideration. *Bravman v. Bassett Furniture Industries, Inc.,* 552 F.2d 90, 93 (3d Cir.) *cert. denied,* 434 U.S. 823, 98 S.Ct. 69, 54 L.Ed.2d 80 (1977); *Darlington,* 504 A.2d at 314–315. Engstrom argues that, because Wendt and Engstrom knew of the statutory retirement age in effect at the time Wendt made the statements, both parties contemplated "until voluntary retirement" to mean a specific time period, i.e., until age 65. But plaintiffs fail to cite *any* evidence of record to support the inference that Wendt understood "employment until voluntary retirement" to mean employment until age 65, *see Anderson,* 477 U.S. at ——, 106 S.Ct. at 2510, 91 L.Ed.2d at 212. Also, Engstrom stated in his deposition:

> Q. This promise was not for a particular number of years, but was until voluntary retirement; is that right?
>
> A. That's correct. (Engstrom Dep. 144).

Engstrom also stated that he "never had any intention of retiring." (Engstrom Dep. 169).

Plaintiffs have failed to present any evidence to show that *both* Mr. Engstrom and Wendt or Nuveen understood "voluntary retirement" to mean until Engstrom turned 65 years old; or any other term of a specific and definite length of time; therefore, plaintiff has not rebutted the at-will presumption in this manner.

Engstrom also contends that there is sufficient evidence of additional consideration to rebut the at-will presumption. After an excellent review of the case law, the

*Darlington* court defined "additional consideration" as:

"when an employee affords his employer a substantial benefit other than the services which the employee is hired to perform, or when the employee undergoes a substantial hardship other than the services which he is hired to perform."

*Darlington,* 504 A.2d at 315. The evidence of additional consideration plaintiffs have adduced in response to the summary judgment motion is that Mr. Engstrom did not seek other job opportunities in reliance on Wendt's alleged promises and that Engstrom "could have gone across the street and [gotten] another job easily." (Engstrom Dep. 90–91; plaintiffs' answer to motion for summary judgment, pg. 10). Foregoing other employment opportunities is not the "additional consideration" sufficient to overcome the presumption of employment at-will under Pennsylvania law because every employee who remains employed at one job foregoes the opportunity to work elsewhere. *Lightcap v. Keaggy,* 128 Pa.Super. 348, 194 A. 347, 351–52 (1937); *Brennan,* slip op. at 2; *see also Darlington,* 504 A.2d at 315.

Plaintiffs argue that *Bravman v. Bassett Furniture Industries, Inc.,* 552 F.2d 90 (3d Cir.), *cert. denied,* 434 U.S. 823, 98 S.Ct. 69, 54 L.Ed.2d 80 (1977), establishes proof an employee sacrificed other employment opportunities overcomes the presumption of employment at-will. In *Bravman,* the plaintiff represented many furniture manufacturers, including defendant Bassett Furniture. In consideration for giving up his representation of other furniture manufacturers, Bravman received the exclusive right to solicit orders for Bassett furniture. Bravman also began personally to guarantee the creditworthiness of accounts he solicited for Bassett and hired an associate at his expense to help service Bassett accounts. The Third Circuit held that a jury could have found the requisite "additional consideration." However, *Bravman* is inapposite because Engstrom presented no evidence of substantial additional benefits to Nuveen other than the services for which he was hired. *See Darlington,* 504 A.2d at 314–15.

Even if Engstrom has shown that he sacrificed other employment opportunities sufficient to show "additional consideration" to overcome the at-will presumption, "the duration of the employment contract is deemed to be for a reasonable period of time." *Harsco Corp. v. Zlotnicki,* 779 F.2d 906, 910–11 (3d Cir.1985), *citing Bravman,* 552 F.2d at 93. Wendt made the statements that Engstrom allegedly relied upon in 1969; Nuveen fired Engstrom in 1985. By any standard, Nuveen employed Engstrom for a reasonable period of time. Because there is no genuine issue of material fact whether Nuveen employed Engstrom for a reasonable period of time, Nuveen would be entitled to summary judgment on the breach of contract claim even if the court were to determine that Engstrom's evidence that he sacrificed other employment opportunities was sufficient "additional consideration" to overcome the at-will presumption. Therefore, because there is no genuine issue of material fact whether Mr. Engstrom can overcome the presumption of employment-at-will, Nuveen was entitled to discharge Engstrom at any time and Nuveen is entitled to judgment as a matter of law. *Murray,* 782 F.2d at 435.

Plaintiffs argue that even if Engstrom were an employee, Wendt's promises of "excellent treatment in salaries, bonuses and promotion" and to "make up" for Engstrom's lost stock investments constitute terms of an oral contract that Nuveen breached. Plaintiffs present evidence that Wendt made these statements on a number of occasions, but always in response to Engstrom's complaints and in a casual manner.[3] Wendt's statements are too

3. In September or October, 1969, Engstrom called Wendt to tell Wendt that he would have to obtain another job because he thought his Nuveen stock was worthless; Wendt told Engstrom that "you'll receive excellent treatment in salaries, bonuses and promotions. I'll make up for your lost stock investment. I'll treat you as well as I would treat myself. I know I have an obligation to you and you'll be rewarded in the end." (Engstrom Dept. 90–92). In addition, over a period of years, the Engstroms socialized with Frank Wendt and his wife. They travelled

vague to constitute offers which Engstrom can enforce.

Under Pennsylvania law, an agreement is enforceable only if both parties manifest an intent to be bound by its terms, the terms are sufficiently definite to be specifically enforced, and the agreement is supported by consideration. *Channel Home Centers, Grace Retail v. Grossman*, 795 F.2d 291, 298–99 (3d Cir.1986). Whether terms are sufficiently definite to be specifically enforced is a question of law. *Cf. Channel Home Centers*, 795 F.2d at 300 (Court of Appeals finds terms of agreement sufficiently definite to be specifically enforced.) Promises of "excellent treatment" in salaries, bonuses and promotions or to "make up" for Engstrom's lost stock investments through other payments are not sufficiently definite to be specifically enforced; furthermore, Engstrom presented insufficient evidence of consideration to enforce Wendt's promises as an oral contract. Thus, the court grants summary judgment on the breach of contract claim.

The court also grants Nuveen's motion for summary judgment on the promissory estoppel claim. Pennsylvania law recognizes promissory estoppel in accordance with Section 90 of Restatement (Second) of Contracts.[4] *Green v. Interstate United Management Services Corp.*, 748 F.2d 827, 830 (3d Cir.1984); *Murphy v. Burke*, 454 Pa. 391, 398, 311 A.2d 904, 908 (1973). In certain special cases where there is an offer and acceptance but no consideration, the offeree may nevertheless have an enforceable promise. However, to create liability on the basis of promissory estoppel, a promise must be of such a nature and made under such circumstances that the promisor should reasonably anticipate that it will induce action or forbearance of a definite and substantial character by the promisee, the promise must actually induce such action or forbearance, and the circumstances must be such that injustice can only be avoided by enforcing the promise. *Universal Computer System v. Medical Services Association*, 628 F.2d 820, 824 (3d Cir.1980). The statements made to Mr. Engstrom were not specific enough or made under such circumstances that a reasonable person could find that Nuveen should have expected the statements to induce reliance.

Engstrom also has failed to offer sufficient evidence to create a genuine issue of material fact whether remaining at Nuveen for 16 years after receiving the alleged promises and failure to look for other employment was forbearance of a definite and substantial character in reasonable and justifiable reliance on Nuveen's alleged promise. Even assumming that a jury would find that Wendt made promises to Engstrom, Engstrom stated in his deposition that he never sought or received another job offer while employed at Nuveen (Engstrom Dep. 178–79; 181). Plaintiffs failed to offer sufficient evidence in response to the summary judgment motion that Engstrom sought another job or refrained from looking for other work because of the statements made to him.

to Hawaii together in September of 1970 and visited Greece and Europe together in the spring of 1978. The Engstroms visited the Wendts in their homes in New York, Connecticut and Maine. Wendt's wife frequently stated that she was bitter about the loss suffered on the Nuveen stock during Nuveen's financial crisis because it was supposed to aid their retirement. On these occasions, Wendt said to both the Engstroms, "bonuses will have to make up for it." (Engstrom Dep. 97–98). When Wendt gave Engstrom his bonus in 1969, he said "I wish it was more Fred, but that's all I can do at the present, but I'll make it up to you in the end." (Engstrom Dept. 102–103, 106–107). On the trip to Greece in 1978, Engstrom complained to Wendt about the amount of his 1977 bonus. Wendt told him, "I know it's too low, but because of taking on many non-producing employees mainly in the fund area, you'll have to sacrifice, Fred, but I'll make it up in the end." (Engstrom Dep. 102).

4. § 90. Promise Reasonably Inducing Action or Forbearance

(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

Restatement (Second) of Contracts § 90(1) (1981).

Engstrom's failure to seek other employment is not forbearance of a definite and substantial character as a matter of law because there is not sufficient evidence from which a reasonable person could find that Engstrom failed to look for other work *in detrimental reliance* on the alleged promises. *See Anderson,* 477 U.S. at ——, 106 S.Ct. at 2513, 91 L.Ed.2d at 215; *Brennan,* slip op. at 3.

A reasonable person could not find that Engstrom's reliance was reasonable. Engstrom is a sophisticated businessman; however, none of the alleged promises made were in writing and there is no evidence that Engstrom asked to confirm the terms in writing. Wendt made most of the promises in a social setting when they were on vacation. Engstrom stated in his deposition that he did not know of any other Nuveen employees who received assurances of employment until voluntary retirement, excellent treatment in salaries and bonuses, or compensation to "make up" for money lost in investments in Nuveen stock. Engstrom allegedly relied on these promises for 16 years after the promises were made. On this evidence, even drawing all inferences in favor of plaintiffs, the issue of reasonable reliance cannot be resolved in favor of Engstrom.

Even if one could reasonably find that Engstrom relied on the alleged promises, there is insufficient evidence for a jury to find that Engstrom relied on the alleged promises to his detriment. The only evidence plaintiffs produced that could support a finding of detrimental reliance was Engstrom's deposition. At one point in the deposition, Engstrom recounted the 1969 conversation with Wendt where, in response to Engstrom's statement that he would be forced to find another job, Wendt promised Engstrom employment until voluntary retirement and excellent treatment in salaries, bonuses and promotions. Engstrom testified that he responded "sure, okay, Frank. I know it's going to be tough, but I'll stick it out." (Engstrom Dep. 91). Engstrom also stated that he never looked for other employment from 1969 until his discharge in 1985. (Engstrom Dep. 181). On the facts of this case, merely failing to seek other employment is not detrimental reliance because Engstrom chose to remain employed at Nuveen. Engstrom must present sufficient evidence from which it could reasonably be found that Engstrom refused offers of comparable work and relied on the alleged promises of employment until his voluntary retirement and excellent treatment in salaries, bonuses, and promotions to his *detriment;* plaintiffs failed to do so. *Brennan,* slip op. at 3.[5]

The court grants Nuveen's motion for summary judgment on the fraud claim with regard to the alleged representations in paragraphs 16 and 17 of the second amended complaint that Engstrom would receive annual salaries that compared "very favorably to the highest rates paid in [the] industry," cash bonuses in profitable years, "excellent treatment, salary increases and bonuses", "generous payments" to make up for lost stock investment, and employment until his voluntary retirement. Under Pennsylvania law, common-law fraud is defined as "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result." *Scaife Co. v. Rockwell-Standard Corp.,* 446 Pa. 280, 285, 285 A.2d 451, 454 (1971), *cert. denied,* 407 U.S. 920, 92 S.Ct. 2459, 32 L.Ed.2d 806 (1972); *Neuman v. Corn Exchange National Bank & Trust Co.,* 356 Pa. 442, 51 A.2d 759 (1947).

5. Nuveen argues that because Engstrom expressed no desire to leave Nuveen before 1969 when the company was not having financial trouble, no one could reasonably find that he relied on promises of employment and payments when Nuveen was acquired by IDS in 1969. Nuveen's memo in support of motion for summary judgment, pg. 23–24. The court rejects this argument, because Nuveen asks the court to draw an inference from the evidence against the plaintiffs. On a motion for summary judgment, all inferences must be drawn in favor of the non-moving party. *Anderson,* 477 U.S. at ——, 106 S.Ct. at 2514, 91 L.Ed.2d at 216.

At trial, Engstrom would have to prove fraudulent intent by clear, precise, and convincing evidence. *Beardshall v. Minuteman Press International, Inc.*, 664 F.2d 23, 26 (3d Cir.1981); *Snell v. Pennsylvania*, 490 Pa. 277, 416 A.2d 468, 470 (1980). In ruling on a motion for summary judgment, the court must view the evidence through the prism of the substantive evidentiary burden. *Anderson*, 477 U.S. at ——, 106 S.Ct. at 2513, 91 L.Ed.2d at 215. Engstrom must come forward with affirmative and concrete evidence which would allow a jury to find fraudulent intent by clear, precise, and convincing evidence. *Id.* *Anderson* makes clear that a defendant may be entitled to summary judgment even where the defendant's state of mind is at issue. *Anderson*, 477 U.S. at ——, 106 S.Ct. at 2514–15, 91 L.Ed.2d at 216–217.

Engstrom cannot defeat summary judgment on the fraud count by arguing that a dispute of fact exists because a jury might disbelieve Wendt's testimony as to state of mind and fraudulent intent. No reasonable jury could find from the evidence before the court on summary judgment that Engstrom had proved fraud, because Wendt, at the time he spoke, did not intend to give Engstrom very favorable salaries, bonuses, excellent treatment, or employment until voluntary retirement. Plaintiffs fail to point to *any* affirmative evidence in the record of fraudulent intent by Wendt or any Nuveen's agent when the representations in paragraphs 16 and 17 of the second amended complaint were made.

The tort of loss of consortium is derivative of the spouse's right to recover on an underlying tort action. *Murray v. Commercial Union Insurance Co.*, 782 F.2d 432, 438 (3d Cir.1986). Because none of the tort counts survive Nuveen's motion for summary judgment, the court grants summary judgment on Mrs. Engstrom's claim for loss of consortium.

The court also grants plaintiffs' motion to set aside the default on the counterclaim. Under *Gold Kist, Inc. v. Laurinburg Oil Co., Inc.*, 756 F.2d 14, 19 (3d Cir.1985), this court must consider three factors: 1) whether Nuveen will be prejudiced; 2) whether the Engstroms have a meritorious defense; and 3) whether the default was the result of the Engstroms' culpable conduct. A decision to vacate entry of default is in the discretion of the court, although defaults are not favored. *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 194–95 (3d Cir.1984).

Plaintiffs' counsel states that he failed to receive the defendant's answer and counterclaim to the second amended complaint although someone at his office did accept delivery. The court believes that the Engstroms failed to respond to the counterclaim not because of lack of diligence or culpable conduct, but because their counsel failed personally to receive the counterclaim that was properly served; there is no evidence that the *plaintiffs* themselves acted in bad faith. *See, e.g., Farnese v. Bagnasco*, 687 F.2d 761, 764–65 (3d Cir.1982); *cf. Dunbar v. Triangle Lumber and Supply Company*, 816 F.2d 126, 127 (3d Cir.1987) (attorney's derelictions are not sufficient evidence of a *party's* responsibility or culpability when determining whether to dismiss a complaint for lack of prosecution).

Nuveen will not be prejudiced by vacating the default. Nuveen argues that it will be prejudiced by delay in the ultimate disposition of the case. However, plaintiffs state that they do not plan any discovery on the counterclaim (plaintiffs' reply memorandum, pg. 7). Even if both parties conducted discovery on the counterclaim, the time needed to conduct reasonable discovery is not sufficient delay to constitute the severe prejudice to Nuveen necessary to deny plaintiffs an opportunity to defend against the counterclaim.

The Engstroms also allege a meritorious defense to the counterclaim. Nuveen states a claim to civil damages under Pennsylvania's Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. § 5725 because the Engstroms allegedly unlawfully recorded telephone conversations with Wendt. The Engstroms state that because Wendt knew the calls were being recorded, Wendt impliedly consented

to taping, so their conduct is covered by an exception to the state statute. Without expressing any view on their likelihood of success, the court finds that the Engstroms may present a meritorious defense sufficient to support the decision to vacate the entry of default.

Because the default did not result from culpable conduct by the plaintiffs, Nuveen will not be prejudiced, and the Engstroms may have a meritorious defense, the default is vacated.

An appropriate order follows.

### ORDER

AND NOW, this 31st day of August, 1987, upon consideration of defendant's motion for summary judgment, plaintiffs' response thereto, and defendant's reply, and upon consideration of plaintiffs' motion to set aside entry of default on the counterclaim, defendant's response thereto, and plaintiffs' reply, and following oral argument held on the motions, it is ORDERED that:

1. The motion for summary judgment on the claims for breach of contract, fraud, promissory estoppel, and loss of consortium is GRANTED.

2. The motion to set aside entry of default on the counterclaim is GRANTED.

3. On or before October 16, 1987, the parties shall complete discovery on the counterclaim.

4. On or before October 30, 1987, the parties shall submit a joint final pretrial memorandum in accordance with Local Rule 21(d).

5. A final pretrial conference shall be held November 16, 1987, at 4:30 p.m.

In addition to trial counsel, plaintiffs and a representative of defendant with full settlement authority shall attend unless leave of court is granted for telephone availability.