Joseph P. VIOLANTI, Plaintiff,

v.

**EMERY WORLDWIDE A–
CF COMPANY, et al.,
Defendants.**

No. 1:CV–93–0855.

United States District Court,
M.D. Pennsylvania.

March 11, 1994.

Peter G. Loftus, Peter G. Loftus, P.C., Scranton, PA, for plaintiff.

Vincent Candiello, S. Whitney Rahman, Morgan, Lewis & Bockius, Harrisburg, PA, for defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND

Plaintiff Joseph Violanti alleges in this ADEA[1] action that he was discharged from his position with defendant Emery Worldwide A–CF Company (Emery)[2] on the basis of age. 29 U.S.C. § 623(a)(1). Plaintiff is an attorney and was employed in the Corporate Tax Department of Emery's Scranton, Pennsylvania office.

Plaintiff was hired by Emery Air Freight, Inc. on January 4, 1982 to work in Emery's Scranton accounting office. Emery Air Freight, Inc. was purchased by Consolidated Freightways, Inc. on or about February 4, 1989 and the corporate name subsequently changed to the name appearing in the caption.

Following the acquisition, an offer of continuing employment was extended to plaintiff through defendant Jeffrey M. Raider, Manager of Human Relations for Emery's Scranton office. In a letter dated September 19, 1989, Raider asked plaintiff to continue his

---

1. The Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 (1988) (ADEA).

2. Emery Worldwide was formerly known as Emery Air Freight, Inc.

employment in the tax department with the understanding that he would be guaranteed a job with full benefits until September 11, 1990. A second offer of continuing employment was extended through Howard Young, Emery's Vice–President of Corporate Tax. In a letter dated March 27, 1990, Young offered Violanti a one-year extension of employment with all benefits remaining the same as those stated in the September 11, 1990 offer. The one-year extension of plaintiff's employment began March 1, 1990.

Violanti continued in Emery's employ after his contract of employment expired on March 1, 1991. Personnel changes were made in the Scranton accounting department during the summer of 1991. New employees were hired and certain duties were re-assigned. During that same time frame, Emery reported monthly losses.

Due to Emery's financial problems, it was announced on September 4, 1991 that there would be a twenty-five percent reduction in the work force. On September 5, 1991, plaintiff was advised by defendant Young that he would be laid-off effective September 6, 1991.

Plaintiff alleges that he was unfairly singled out and that his layoff was inconsistent with the work-force reduction procedures previously announced by Emery. Announced company policy was to base lay-offs on company seniority and department seniority. Plaintiff alleges that he was the most senior employee in his department, but he was laid off while younger, less experienced and less qualified members of the department were retained. Plaintiff was fifty-three years of age at the time of the lay-off.

On the basis of these facts, plaintiff asserts claims: 1) under the ADEA (Count I); 2) under the Pennsylvania Human Relations Act (PHRA), 43 Pa.Cons.Stat.Ann. §§ 951–963 (1991) (Count II); 3) for wrongful discharge (Count III); 4) for breach of contract (Count IV); 5) under ERISA[3] (Count V);

and 6) for promissory estoppel (Count VI). All claims are asserted against Emery, and Emery employees Jeffrey M. Raider, Howard Young and Mike Yost.

This case was removed from the Court of Common Pleas of Lackawanna County, Pennsylvania by a notice of removal filed June 4, 1993.[4] Plaintiff Joseph P. Violanti commenced the state court action on April 14, 1993 by writ of summons.

Before the court is a Rule 12(b) motion filed by the defendants. Defendants Young and Yost seek dismissal of all claims asserted against them for failure to effect proper service and for lack of personal jurisdiction. Defendants Young, Yost and Raider seek dismissal of all counts for failure to state a claim against them. Emery seeks dismissal of Count II as premature and of Counts III, IV, V and VI for failure to state a claim.

For the reasons which follow, we will enter an order: 1) dismissing all claims asserted against defendants Raider, Young and Yost; and 2) dismissing Counts III, IV, V and VI as against Emery. Plaintiff's claims asserted under the ADEA and PHRA against Emery (Count I and II) remain.

## DISCUSSION

### Rule 12(b)(6) standards

■■ Under a Rule 12(b)(6) motion, a complaint may not be dismissed for failure to state a claim upon which relief can be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). The court must accept all material allegations in the complaint as true and construe them in the light most favorable to the party opposing the motion. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Johnsrud v. Carter,* 620 F.2d 29 (3d Cir.1980); and *Truhe v. Rupell,* 641 F.Supp. 57, 58 (M.D.Pa. 1985) (Rambo, J.). Although the complaint is to be liberally construed in favor of the plain-

**3.** The Employee Retirement Income Security Act of 1974 (ERISA), as amended, 29 U.S.C. §§ 1001, *et seq.*

**4.** This is the second action filed before this court by Violanti based on his termination of employ-

ment by Emery Worldwide. The first, filed to Civil No. 1:CV–92–1631, was terminated in 1993 and the claims asserted therein subsumed by this action.

tiff (See: Fed.R.Civ. 8(f)), the court does not have to accept every allegation it contains as true. Conclusory allegations of law, unsupported conclusions and unwarranted inferences need not be accepted as true. *Conley, supra,* 355 U.S. at 45–46, 78 S.Ct. at 101–02.

### *Failure to effect service on defendants*

■ Defendants Young and Yost seek dismissal of the claims against them due to ineffective service. Both defendants have provided affidavits stating that service was never made on them. Plaintiff attempted service by having the sheriff of Lackawanna County, Pennsylvania mail a copy of the summons, by certified mail, to a California address where neither defendant works or resides. Both defendants further state that neither they, nor anyone authorized to act on their behalf, signed the receipt accepting service.

Under the circumstances, service was not effected against either defendant. See: Pa. R.Civ.P. 403 (Service by Mail). Were it not for the incurable defects in plaintiff's claims against these defendants on other grounds, we would give plaintiff leave to attempt to cure the defect. Since the claims asserted against defendants Young and Yost are fatally flawed on other grounds, granting plaintiff leave to attempt to cure the defect would serve no useful purpose.

### *Personal jurisdiction over defendants Young and Yost*

■ Defendants Young and Yost also challenge plaintiff's complaint on jurisdictional grounds. Defendants argue that they have insufficient contacts with Pennsylvania to justify this court's exercise of personal jurisdiction over them. The service of process rules of the state where the district court sits govern personal jurisdiction issues. *Bane v. Netlink, Inc.,* 925 F.2d 637, 639 (3d Cir.1991) and Fed.R.Civ.P. 4(e). The Pennsylvania long-arm statute permits state courts to exercise *in personam* jurisdiction "to the fullest extent allowed under the Constitution of the United States" and to be based on "the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa.Cons.Stat.Ann. § 5322(b) (Purdon 1981). The principal inquiry is whether the exercise of jurisdiction is constitutionally proper.

Personal jurisdiction may be based either on the conduct of the non-resident defendant which gave rise to the cause of action (specific jurisdiction), or on the defendant's general contacts with the forum state, provided those contacts are "continuous and systematic", (general jurisdiction). *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 473 n. 15, 105 S.Ct. 2174, 2182, 2182 n. 15, 85 L.Ed.2d 528 (1985) and *Helicopteros Nacionales de Colombia, S.A. v. Hall, (Hall),* 466 U.S. 408, 414 n. 8 and 9, 104 S.Ct. 1868, 1872 n. 8 and 9, 80 L.Ed.2d 404 (1984).

■ "[G]eneral jurisdiction exists when there are sufficient contacts to justify an assertion of 'personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.' " *Covenant Bank for Savings v. Cohen,* 806 F.Supp. 52, 55 (D.N.J.1992), quoting *Hall, supra,* 466 U.S. at 414 n. 9, 104 S.Ct. at 1872 n. 9. "Mere minimum contacts" are not enough to establish general jurisdiction— "The nonresident's contacts to the forum must be continuous and substantial." *Provident National Bank v. California Federal Savings & Loan Association,* 819 F.2d 434, 437 (3d Cir.1987). Accord: *Hall, supra,* 466 U.S. at 415–16, 104 S.Ct. at 1872–73.

■ Specific jurisdiction is based on defendant's "purposefully directing activity toward the forum state," *Applied Biosystems, Inc., v. Cruachem, Ltd.,* 772 F.Supp. 1458, 1470 (D.Del.1991), such that it could "reasonably anticipate being haled into court there", *Burger King, supra,* 471 U.S. at 474, 105 S.Ct. at 2183; *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980) and *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958). Proof that the defendant has "purposefully directed" its activities at residents of the forum state, "deliberately engaged" in "significant activities" in the state, or created "continuing obligations" with state residents establishes personal jurisdiction over the defendant in litigation arising out of such activi-

ties. *Burger King, supra*, 471 U.S. at 475–76, 105 S.Ct. at 2183–84 (Citations omitted.)

If minimum contacts exist, then the court considers whether its exercise of personal jurisdiction over the defendant "accords with the notions of 'fair play and substantial justice.'" *Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 481 (3d Cir.1993), citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). The defendant bears the burden of showing that such is not the case, and the factors relevant to that determination are: "1) the interests of the forum state; 2) the plaintiff's interest in obtaining relief; 3) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and 4) the shared interest of the several States in furthering fundamental substantive social policies." *Mesalic v. Fiberfloat Corp.*, 897 F.2d 696, 701 (3d Cir.1990), citing *Asahi Metal Industry Co. v. Superior Court*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1032, 94 L.Ed.2d 92 (1987). In making this determination, if the requisite minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction may "justify even the serious burdens placed on the alien defendant." *Grand Entertainment Group*, 988 F.2d at 483.

■ When personal jurisdiction is challenged, the plaintiff bears the burden of proving that it is proper through affidavits "or other competent evidence". *North Penn Gas Co. v. Corning Natural Gas Corp.*, per curiam, 897 F.2d 687, 689 (3d Cir.), cert. denied, 498 U.S. 847, 111 S.Ct. 133, 112 L.Ed.2d 101 (1990).

■ Violanti offers absolutely nothing in support of his assertion that personal juris-

diction exists over defendants Young and Yost. Plaintiff's allegations on this issue are almost nonexistent. So far as this court can determine from the pleadings: Both defendants are California residents.[5] Their only contacts with Pennsylvania were dealings with the plaintiff over the matter of his continuing employment with Emery at its Scranton, Pennsylvania office.[6] Defendants were acting in their capacities as agents or employees of Emery, not in individual capacities. The only asserted basis for the existence of jurisdiction over them is their alleged complicity in violating the PHRA by terminating plaintiff's employment on the basis of his age.[7] That is plainly insufficient to establish the requisite minimum contacts with this jurisdiction.

The claims asserted against defendants Young and Yost are, therefore, dismissable for lack of personal jurisdiction.

### ADEA/PHRA claims against individual defendants

■ Defendants move to dismiss plaintiff's ADEA/PHRA claims asserted against them in their individual capacities. The circuits are divided on the question of whether defendants may be sued in their individual capacities under the ADEA or Title VII.

Most courts which have ruled that it was not Congress' intent to establish a cause of action for employment discrimination against supervisors or co-employees have based their decision on the nature of damages available under Title VII and the Act's focus on the employer as the tool for eradicating discrimination in the workplace. See: *Weiss v. Coca–Cola Bottling Co.*, 772 F.Supp. 407, 410–11 (N.D.Ill.1991). Prior to the 1991

---

**5.** Plaintiff's complaint, paras. 8 and 9. Plaintiff not only alleges that both individuals are California residents, he further alleges that both "have their principal place of business" in that state.

**6.** See, e.g., paragraph 19 of plaintiff's complaint in which plaintiff alleges receipt of a letter in 1991 from defendant Young extending his employment with Emery for one year; paragraph 24 of the complaint in which plaintiff alleges meeting with defendant Young in July, 1991 regarding the nature of plaintiff's work for Emery

(Plaintiff does not allege where the meeting was held.); and paragraphs 28 through 31 in which plaintiff alleges engaging in a telephone conversation with defendant Young and a subsequent attempt on his part to contact defendant Young by phone to discuss his layoff. Again, plaintiff does not indicate where Young was when the telephone conversations took place.

**7.** Plaintiff's opposing brief, record document no. 10, pp. 8–9.

amendments to the Civil Rights Act of 1964,[8] neither compensatory nor punitive damages were recoverable under Title VII. The relief available was in the nature of equitable relief only in the form of back pay, front pay or reinstatement, and attorneys' fees. Such damages are available, as a practical matter, against the employer only. *Id.* at 411. See also: *Miller v. Maxwell's International, Inc.,* 991 F.2d 583 (9th Cir.1993) and *Pommier v. Edelstein Enterprises,* 816 F.Supp. 476, 480 (N.D.Illinois (1993).

Further evidence of Congress' intention not to impose liability on individual employees is the Act's limitation on liability to employers with twenty or more employees, 29 U.S.C. § 630(b),[9] included to avoid burdening small businesses with the costs associated with litigating discrimination claims. Observed the Ninth Circuit in *Miller, supra,* 991 F.2d at 587, "If Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees."

Most courts which have held that individual liability can exist under Title VII have based that holding on the statutory definition of employer.[10] "Employer" is defined, under both Title VII and the ADEA to include the agents of the employer. 42 U.S.C. § 2000e–1 and 29 U.S.C. § 630(b).

Others have relied upon the availability of individual liability under section 1981 and analogized it to employment anti-discrimination statutes, reasoning that "individual defendants should be treated the same way under the ADEA and Title VII as they are under § 1981." *Vakharia v. Swedish Covenant Hospital,* 824 F.Supp. 769, 785 (N.D.Ill. 1993). A few courts have expressed concerns that in the absence of individual liability, the victim may go uncompensated and the true wrongdoer unpunished. *Id.* at 786.

Of all the reasons expressed for permitting or not permitting individual liability, we find those not extending liability the most persuasive and will follow their holdings. See, e.g., *Weiss, supra.* The same considerations apply to the imposition of individual liability under the PHRA.

Defendants' motion to dismiss plaintiff's ADEA/PHRA claims asserted against defendants in their individual capacities will, therefore, be granted.

### *Asserted failure to exhaust administrative remedies*

■ Defendants argue that plaintiff's PHRA claim should be dismissed because he

---

**8.** The unavailability of compensatory and punitive damages was, of course, altered by the 1991 amendments which permit the recovery of both. That change has led some courts to consider whether the 1991 amendments changed prior law on this issue and requires a finding that individual liability is now appropriate and intended by Congress under the 1991 amendments. See, e.g., *Bridges v. Eastman Kodak Co.,* 800 F.Supp. 1172, 1180 (S.D.N.Y.1992).

We need not address that issue, since application of the Act, as amended in 1991, to impose personal liability on the individual defendants named in this case would clearly be inappropriate. Although the question of the retroactivity of the 1991 amendments generally, is a controversial one which has yet to be decided by the United States Supreme Court, even if the Supreme Court were to find in favor of retroactivity generally, this Court finds that that holding would not be extended to the imposition of liability against individual employees—since such liability did not exist prior to the amendments. Permitting such liability would create an entirely new cause of action against individuals who could not be held personally liable under the prior law.

While there are conflicting lines of Supreme Court authority on the question of retroactivity

generally, (See, e.g. the discussion at *Bridges, supra,* 800 F.Supp. at 1176–1178), retroactive application which would result in the creation of a new cause of action or impose liability on a class of defendants not theretofore liable is disfavored generally. See, e.g., *Bradley v. School Board of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974) in which the Supreme Court stated that: "a court is to apply the law in effect at the time it renders its decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." and *Bennett v. New Jersey,* 470 U.S. 632, 639, 105 S.Ct. 1555, 1560, 84 L.Ed.2d 572 (1985) in which the Supreme Court held that "statutes affecting substantive rights and liabilities are presumed to have only prospective effect."

**9.** Title VII limits liability to employers with fifteen or more employees, 42 U.S.C. § 2000e(b).

**10.** See, e.g., *Hamilton v. Rodgers,* 791 F.2d 439, 442–43 (5th Cir.1986) (citing *Jones v. Metropolitan Denver Sewage Disposal Dist.,* 537 F.Supp. 966, 970 (D.Colo.1982)), *limited by Harvey v. Blake,* 913 F.2d 226, 227–28 (5th Cir.1990).

did not exhaust state administrative remedies before filing this action. PHRA claimants are required to file a claim before the Pennsylvania Human Relations Commission (PHRC) before pursuing judicial relief. *James v. International Business Machines Corp.*, 737 F.Supp. 1420, 1426–27 (E.D.Pa. 1990); *Clay v. Advanced Computer Applications*, 522 Pa. 86, 559 A.2d 917, 919–21 (1989) and 43 Pa.Stat.Ann. § 959.

Once a complaint is filed before the PHRC, the complainant cannot file a judicial action until (1) the PHRC dismisses the complaint or (2) enters into a conciliation agreement to which the complainant is a party, and the complainant is notified of the occurrence of either (1) or (2). Either of these events must take place within one year from the PHRC filing. 43 Pa.Stat.Ann. § 962(c). If the one-year period expires with no resolution by the PHRC, the complainant is then free to initiate a court action.

Plaintiff filed his first action based on his layoff from Emery only eight months after filing an administrative claim before the PHRC. Although his federal complaint was premature, that defect is not fatal to his claim and is correctable by the passage of time. More than one year has now passed since his PHRC filing, entitling him to maintain an action on that PHRA claim. Rather than dismiss plaintiff's claim on a curable, technical defect, we will allow his claim to be decided on the merits. Cf. *Lyons v. Springhouse*, Civ. No. 92–6133, slip op. at 3, 1993 WL 69515 (E.D.Pa. March 10, 1993) (Plaintiff's PHRA claim dismissed based on court's finding that premature filing of judicial action constituted a failure to make a good faith effort to exhaust administrative remedies under the PHRA.)

Defendants' motion to dismiss plaintiff's PHRA claim as premature will, therefore, be denied.

### Breach of contract

Plaintiff alleges a breach of contract claim against all defendants. There is no conceivable basis for such a claim against defendants Young, Yost, or Raider, and none is alleged. Those individuals were not plaintiff's employer, and he would not, under any scenarios have had a contractual relationship with

them for continued employment. His employer was Emery, and any contract of employment would be enforceable only against it.

There are fatal defects in plaintiff's claim against Emery as well. In Pennsylvania, "the employment relationship is presumed to be at-will unless the employee can overcome that presumption with evidence of definite and specific terms of employment concerning length of employment or cause for termination." *Engstrom v. John Nuveen & Co., Inc.*, 668 F.Supp. 953, 957 (E.D.Pa.1987). See also: *Andrew v. Lemmon Pharmacal Company*, 767 F.Supp. 657, 658 (E.D.Pa. 1990). "Although contract terms can be implied, the employment contract itself cannot; either the employee works at-will or has an express employment contract with a term establishing a definite and specific length of employment." *Id.*

■■■■ In Pennsylvania, there is a very strong presumption of at-will employment relationships and the level of proof required to overcome this presumption is arduous.

The *sine qua non* of the presumption is that except in rare circumstances, discharges will not be reviewed in a judicial forum. The presumption may be overcome by express contract, implied in-fact contract (that is, the surrounding circumstances of the hiring may indicate that the parties did not intend it to be at-will), and additional consideration passing from the employer (that is, if the employee bestows a legally sufficient benefit or incurs a sufficient detriment for the benefit of the employer beyond the services for which he was hired, a court may infer that the parties intended to overcome the at-will presumption).

*Scott v. Extracorporeal, Inc.*, 376 Pa.Super. 90, 545 A.2d 334, 336 (1988).

That the at-will presumption cannot be easily overcome is emphasized in several opinions. "The burden of proof here is very great," *DiBonaventura v. Consolidated Rail Corp.*, 372 Pa.Super. 420, 424, 539 A.2d 865, 867 (1988), and only "clear evidence that the parties intended to contract for a definite period" will set aside the

presumption. *Greene [v. Oliver Realty, Inc.,* 363 Pa.Super. 534, 551, 526 A.2d 1192, 1200, *allocatur denied,* 517 Pa. 607, 536 A.2d 1331 (1987)]. "[G]reat clarity is necessary to contract away the at-will presumption." *Scott v. Extracorporeal, Inc.,* 376 Pa.Super. 90, 99, 545 A.2d 334, 338 (1988). *Veno v. Meredith,* 357 Pa.Super. 85, 99, 515 A.2d 571, 578 (1986), elaborated on that theme: "[T]he modification of an 'at-will' relationship to one that can never be severed without 'just cause' is such a substantial modification that a very clear statement of an intention to so modify is required."

*Schoch v. First Fidelity Bancorporation,* 912 F.2d 654, 660 (3d Cir.1990). Whether the plaintiff has produced sufficient evidence to overcome the at-will presumption is a question of interpretation normally left to the court. *Id.*

According to the plaintiff's complaint, his second contract of employment with Emery expired March 1, 1991, more than six months before plaintiff's employment was terminated. (Plaintiff's complaint, paras. 16–19). Violanti is not alleging a contractual obligation to continue his employment beyond that date.

He bases his claim of a contract of employment on statements and representations purportedly made by Emery in its policy and procedure manual. What statements or procedures those are is not specified. Plaintiff does not even attach a copy of the alleged policy manual to the complaint, making it impossible for the court even to attempt to ascertain what policies those might be.

■ Although, in some cases, language contained in a policy manual or employee handbook has been held capable of transforming what would otherwise be an at-will employment situation into a contractual relationship, a handbook, to be construed as a contract, "must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment." *Reilly v. Stroehmann Bros. Co.,* 367 Pa.Super. 411, 532 A.2d 1212, 1214 (1987). See also: *Scott v. Extracorporeal, Inc., supra,* 545 A.2d at 337 and *DiBonaventura v. Consolidated Rail Corp.,* 372 Pa.Super. 420, 539 A.2d 865, 868 (1988). None of the criteria necessary to demonstrate that the alleged policies or procedures created a contractual relationship is alleged here.

The other purported bases for defendants' breach of contract claim are equally meritless. Plaintiff's claim that his layoff was a violation of the ADEA in no way supports a breach of contract claim. The same is true of his allegation that he was discharged without due process. No basis is alleged for the existence of any contract of employment. Absent such a contract, Emery had an absolute right to discharge him at any time for any reason not violative of state or federal anti-discrimination laws. Plaintiff had no due process right to a hearing, and even if he had, it bears no relationship to a breach of contract claim.

Plaintiff alleges nothing to overcome the presumption that he was an at-will employee at the time of his layoff from Emery. He does not allege a contractual obligation on the part of Emery to employ him for a definite period of time. Nor does he allege any other facts which make his employment relationship with Emery anything other than at-will. There is, therefore, no conceivable basis for a breach of contract claim.

Count IV will, therefore, be dismissed.

### *Wrongful discharge*

Defendants seek to dismiss plaintiff's wrongful discharge claim for failure to state a cause of action. As we concluded above, plaintiff was an at-will employee of Emery.

■ An at-will employee has a cause of action for wrongful discharge only if the discharge violates public policy or is done with a specific intent to harm. *Tourville v. Inter-Ocean Ins. Co.,* 353 Pa.Super. 53, 508 A.2d 1263, 1265 (1986); *Engstrom v. John Nuveen and Company,* 668 F.Supp. 953, 958 (E.D.Pa. 1987); and *Geary v. U.S. Steel Corp.,* 456 Pa. 171, 319 A.2d 174, 177–80 (1974).

Violanti does not base his wrongful discharge claim on anything specific. His allegations on that issue consist entirely of claims that: 1) "he was terminated in viola-

tion of public policy"[11] (What policy was violated is not alleged.); 2) "his termination was done with disinterested malevolence in that the Defendant had no proper interest involved in the termination and there was no reason for the action other than an atavistic desire to hurt the Plaintiff ..."; and 3) "Defendants' sole purpose in terminating the Plaintiff was to harm him as aforesaid."

■ Although discharge of an employee for discriminatory reasons is contrary to public policy, the remedy for such discrimination is a cause of action under the PHRA. There is no separate cause of action under Pennsylvania law for wrongful discharge based on alleged discrimination. *Bruffett v. Warner Communications, Inc.,* 692 F.2d 910, 919–20 (3d Cir.1982); *Keck v. Commercial Union Insurance Co.,* 758 F.Supp. 1034, 1035–39 (M.D.Pa.1991); *Clay, supra,* 559 A.2d at 918–21; and *Schweitzer v. Rockwell Intern.,* 402 Pa.Super. 34, 586 A.2d 383, 388–90.

■ A bald allegation of discharge based on alleged disinterested malevolence is insufficient to state a cause of action for wrongful discharge. Plaintiff offers no facts or supporting details to substantiate his allegation of specific intent to harm. Plaintiff cannot circumvent the requirements for establishing a state law cause of action for wrongful discharge by merely alleging intent to harm on the part of Emery.

Count III of the complaint will, therefore, be dismissed for failure to state a cause of action.

### Sufficiency of the facts alleged

■ Defendants challenge the sufficiency of plaintiff's factual allegations supporting his ERISA claim. Plaintiff alleges absolutely no basis for his asserted ERISA claim. The sole factual allegation made in Count V is that as a result of his layoff, "Plaintiff has been deprived of retirement and/or pension benefits which he should have received." (Plaintiff's complaint, para. 58). Deprivation of retirement benefits due to a layoff is not

an ERISA violation. Count V will, therefore, be dismissed.

Emery also challenges the sufficiency of the facts supporting plaintiff's ADEA and PHRA claims and seeks an order compelling plaintiff to file a more definite statement as to those claims as well as to plaintiff's ERISA claim. Our dismissal of Count V renders the request as to that count moot. The allegations pled in Counts I and II asserting ADEA/PHRA violations are sufficient. Defendants' request for a more definite statement as to those counts will be denied.

### Promissory estoppel

■ Plaintiff's remaining claim is promissory estoppel. Pennsylvania recognizes the doctrine of promissory estoppel as stated in § 90 of the Restatement (Second) of Contracts (1979):

> A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires.

*Travers v. Cameron County School District,* 117 Pa.Cmwlth. 606, 544 A.2d 547, 550–51 (1988).

■ Again, the allegations supporting this count are scant. The sole factual basis alleged for this claim is that "Defendants deprived Plaintiff of benefits for which he had worked and should have received but for the conduct of the Defendants as aforementioned." The conduct aforementioned was the layoff allegedly done in a manner inconsistent with Emery's purported policy of basing layoffs on seniority and allegedly done on the basis of plaintiff's age. This does not assert a claim for promissory estoppel. Plaintiff does not allege what promises, if any, were made, let alone broken. Nor does he allege any reliance on his part.

---

11. Plaintiff's complaint, para. 55.

Count VI will, therefore, be dismissed as against all defendants.

### *Leave to amend denied*

We decline to grant plaintiff leave to amend as to the dismissed counts. Granting leave would serve no useful purpose.[12] The reasons for the dismissal of certain counts and claims of plaintiff's complaint lie not in deficiencies in the pleading, correctable by amendment, but in the nature of the cause of action asserted and other legal issues not susceptible to correction by amendment.

### *ORDER*

For the reasons stated in the accompanying memorandum, **IT IS ORDERED THAT:**

1. Defendants' Rule 12(b) motion is granted to the extent of the relief provided in this order.

2. All claims asserted against defendants Howard Young, Jeffrey M. Raider and Mike Yost are dismissed with prejudice and without leave to amend.

3. Counts III, IV, V and VI are dismissed as against defendant Emery Worldwide A-CF Company (Emery) without leave to amend.

4. Counts I and II as against Emery remain.

5. Emery is granted twenty days from the date of this order to file an answer to the remaining counts of plaintiffs' complaint.

---

12. We note also that this complaint represents plaintiff's second attempt at alleging claims based on his discharge from Emery. See note 4 *supra.*